WILLIAMSON (PECK v.). See Case No. 10,896.

---

## Case No. 17,754.

### WILLIAMSON v. RICHARDSON.[1]

Circuit Court, S. D. Georgia. May 27, 1867.

SPECIAL AND GENERAL AGENTS — COLLECTION OF MONEY—REVOCATION OF AUTHORITY—BONDS—PAYMENT—USAGE.

[1. An attorney employed, not to attend to all his client's legal business, but to collect a particular debt, is a special, as opposed to a general, agent; and those dealing with him are bound to ascertain the extent of his authority.]

[2. The appointment of a second attorney or agent to collect a debt is a revocation of the authority of the first one, and persons knowing of the second appointment are held to a knowledge of the revocation.]

[3. A bond given in 1869, payable in "dollars" generally, was payable in gold and silver only; but, after the passage of the legal tender acts, it could lawfully be discharged by legal tender notes.]

[4. A custom or usage of paying debts in Confederate notes in the insurrectionary states during the war of the Rebellion was illegal, and cannot be sanctioned as of any binding force.]

[This was an action at law by Madeline J. Williamson against John Richardson.]

ERSKINE, District Judge (charging jury). This is an action of debt on bond for twelve thousand dollars principal, and containing a penalty in like sum if conditions of the bond be not performed. At the date of the bond, the plaintiff was not a citizen of Georgia, and at the commencement of this suit she was a citizen of the state of Pennsylvania. The defendant made the bond to the plaintiff in the city of Savannah on the first of January, 1859, to secure the purchase money of a house sold to him by plaintiff, and situate in this city. It is stipulated in the bond that the interest, at the rate of seven per cent. per annum, on the twelve thousand dollars, shall be paid in the manner following, namely: The interest thereon on the first day of January of each and every year from the date of the instrument until the first day of January, 1863, inclusive, and upon which day there shall also be paid six thousand dollars, part of the principal sum. And on the first day of January in each and every year thereafter the interest as and at the rate aforesaid, on such part of the twelve thousand dollars as shall then remain unpaid, together with one thousand dollars, part of the principal sum, until the whole principal with the interest shall be paid. Such, I believe, is the substance of the bond. It is admitted that the interest up to the first of January, 1864, is paid. So, there is no question for you, gentlemen, on that.

Defendant admits that the remaining moie-

---

ty, six thousand dollars and the interest, less ($50), is still unpaid. Therefore the main question may be said to resolve itself into the inquiry whether the six thousand dollars falling due on the first of January, 1863, has or has not been paid.

The declaration contains two counts, the first having several branches. To these counts defendant has pleaded three pleas. Plaintiff has replied, and the parties at controversy came to issue. These pleadings have been read; but they are not for your consideration; it being the exclusive province of the court to pass upon the pleadings, while your appropriate duty is to weigh the facts presented, and a true verdict give, according to the evidence adduced before you. This being understood, and the whole testimony having been heard by you, I must trouble you with even a brief résumé of it, necessarily familiar with it in all its phases as you are.

Plaintiff offered the bond in evidence. Defendant objected, unless certain credits thereon indorsed should then also go to the jury. To this plaintiff objected, because, as she said, she was not bound to prove these credits, that being the duty of defendant. The court sustained the plaintiff, and she closed her evidence. If you find, gentlemen, that Gen. A. R. Lawton was the agent of the plaintiff to collect and receive payment of the bond sued on, then he was, in contemplation of law, a special, and not a general, agent, upon the proofs in the case. Although it be true that one may be a general agent who is put in the place of the principal to transact all his business of a particular kind, as a factor to buy and sell all goods, and a broker to negotiate all contracts of a certain description, an attorney to transact all his legal business, a master to perform all things in relation to the usual employment of his ship, and so in many other instances,—such one is a general agent in the line of business in which he is employed. And, in the case of a person employed specially in one single transaction, the rule is directly the reverse. The party dealing with such a one must ascertain the extent of the agent's authority, and, if he does not, he must abide the consequences. A general authority arises from a general employment in a specific capacity, such as a factor, broker, attorney, &c. I charge you that an attorney to transact all legal business of a man is his general agent in that capacity; while an attorney to collect a particular debt is a special attorney. Therefore, if you find that A. R. Lawton's authority to collect was limited to a particular debt, he was the special agent of the plaintiff, not the general agent.

If you find, gentlemen, that A. R. Lawton was a special agent, then it. was the duty of Mr. Richardson, the defendant, to ascertain, by inquiry, the nature and extent of Lawton's authority; and, if he departed from or exceeded it, the defendant must bear the loss.

And if you find that A. R. Lawton was the attorney at law of the plaintiff to collect this bond, in this particular instance, and not her general attorney to transact her law business, and make collections generally, then he was a special agent; and, if his authority be departed from, the person dealing with him must be content to abide the consequences. An attorney at law is the agent of his client, and, when a claim is placed in his hands to collect, the only power granted to him is to receive the money, if the debtor will pay, or to enforce payment by suit; and consequently he cannot accept anything in discharge of the liability but cash. 12 Ala. 342. If you find that a second agent was appointed to perform the same duties, as to the same contract, as were intrusted to the previous agent, and this fact was known to the debtor, it is, in law, a revocation as to him of the powers of the first appointed agent. And, I may add, a power of attorney may be revoked by implication as well as by express declaration.

It is a principle well established that an attorney at law cannot commute or compound the debt for anything other than money without the assent of his client; and, if he does, the client is not bound. Nor can an attorney in any matter of trust, confidence, discretion, or judgment delegate his authority. The bond in evidence before you, gentlemen, is, as we have seen, for twelve thousand dollars principal, and was made on the first day of January, 1859,—some two years before the inauguration of the Rebellion, and about three years anterior to the passage of the law of congress known as the "Legal Tender Act". [Act Feb. 25, 1862; 12 Stat. 345]. When this bond was entered into, all contracts for the payment of dollars generally were payable in gold and silver; for, by the laws then in force, coin from these metals could alone be lawfully tendered in payment. "Dollars," in the bond, was of the same import as if the words "gold and silver" were therein mentioned. Upon the falling due of the six thousand dollars on the first of January, 1863, it could have been discharged in legal-tender notes, because prior to this time the paramount authority of the United States had declared the legal value of these notes.

You will doubtless recollect, gentlemen, that, during the progress of this case, counsel for defendant asked a witness, whether Confederate money was not received about that time (1863 or '64) generally in payment of debts, and whether it was not exclusively in general use? Counsel for plaintiff objected. Argument followed, and numerous authorities were cited on either side. When learned counsel will present questions of this nature, it is becoming that they be answered by the court. I expressed it then as the opinion of the court—an opinion strengthened by further reflection—that if such was the usage, it was wholly illegal, and could not be recognized.

No usage of any class of men can be supported in opposition to the established principles of law. To suffer a usage or custom of this sort to be set up would be sanctioning disobedience, and giving to disloyalty its unhallowed fruits. Yet here, in this court, it was attempted to be shown that in the year 1863, or 1864, in one of the states in insurrection, a usage or custom existed to pay monied obligations in a pretended currency, which had its origin in treason and rebellion against the lawful government of the United States. Besides, this alleged usage or custom is wanting in every requisite to make it valid; for, to be valid, it must be ancient,—of long standing and known; it must be peaceable, certain, continued, reasonable and compulsory.

It may not be wholly unnecessary to say to you, gentlemen, that it is a general principle of established law, that one owning property may, where no fraud, misrepresentations, or circumventions is put upon him, or in any wise enters into the transaction, alienate it absolutely, or qualifiedly for what currency or thing he pleases, or even give it away; but the case before you, for your present consideration, is of an entirely different character. Here a contract was made in 1859,—six thousand dollars of the principal debt to be paid some three years thereafter; and the question for your determination is, has this six thousand dollars been paid or not? I leave it with you to say.

Gentlemen: This has been a tedious case; and, although at first it seemed intricate, I think it no longer appears so. It has been most thoroughly argued by counsel; and it was a pleasing satisfaction to the court to observe how directly you gave your attention to the testimony, and to arguments presented to you. You will now retire and consider of your verdict.

Verdict: We find the bond declared upon to be the bond of the defendant, and assess damages to the plaintiff in the sum of twelve thousand dollars, with interest from the 1st day of January, 1864, two thousand dollars of the principal not yet due, one thousand to become due on the 1st day of January, 1868, with interest and one thousand dollars to become due on the 1st day of January, 1869, with interest and costs of suit.