Havemeyer v. Paul.

WILLIAM F. HAVEMEYER ET AL., APPELLEES, V.
GEORGE J. PAUL, APPELLANT, ET AL.

FILED JUNE 18, 1895.   No. 7400.

1. **Mortgage Foreclosure:** SUPPLEMENTAL PETITION: FAIL-
URE TO NOTIFY DEFENDANT: EFFECT OF DECREE: EVIDENCE.
In a suit to foreclose a mortgage the owner of the equity of re-
demption was personally served and answered in the time fixed
by statute, traversing the material allegations of the petition.
After such answer day, by leave of court, but without notice to
said defendant, the plaintiff filed a supplemental petition to re-
cover moneys which he alleged he had paid out to insure the
mortgaged property subsequent to the bringing of the suit. *Held*,
(1) The court erred in permitting the supplemental petition to
be filed without notice thereof to the defendant; (2) the de-
fendant, having answered, was bound to take notice of any re-
ply to such answer which the plaintiff might make, but he was
not compelled to take notice of the supplemental petition filed
in the case; (3) the defendant had a right to presume that the
court would render no other or different decree in favor of the
plaintiff than that prayed for by him in his original petition;
(4) that because the defendant had answered the petition of the
plaintiff within the time required by law, it would not be presumed
that he had actual knowledge of the filing of the supplemental pe-
tition; (5) that the plaintiff, by filing the supplemental petition,
in effect brought another suit against the mortgaged property
and all the parties to the original action; and the defendant, with-
out notice of the filing of such supplemental petition, in the
absence of some act of his by which he waived such notice, was
no more concluded by the decree rendered thereon than he
would have been by a decree rendered in favor of the plaintiff
on his original petition without the notice or service of sum-
mons; (6) the evidence examined and found insufficient to sup-
port the finding and decree of the district court in favor of the
plaintiff on the cause of action set out in his supplemental pe-
tition.

2. ———: NOTICE OF DEFENDANT'S CROSS-BILL. To such suit a
number of persons were made co-defendants with said owner, but
not served with process. After the answer day of such owner the
co-defendants filed answers claiming liens upon the mortgaged
property. No notice of the filing of these answers was given

the owner either before or after they were filed. *Held*, (1) That though the Code abrogated the old chancery practice requiring defendants claiming affirmative relief to file cross-bills and serve notice thereof on parties to be affected thereby, it did not abolish the principle that a party is entitled to notice of judicial proceedings instituted against him or his property; (2) that the answers of the co-defendants were in effect suits against the owner of the mortgaged property, and he was not charged with notice of the filing of such answers, because he had been served with process and answered the petition of the plaintiff within the time required by law.

3. **Parties:** PLEADING: NOTICE OF CROSS-BILLS. A party made defendant to an action and duly served with process. is charged with notice of whatever answer any of his co-defendants may file in the action only when such answer is filed by such co-defendant within the time required by law. *Arnold v. Badger Lumber Co.*, 36 Neb., 841, and cases there cited followed and re-affirmed.

4. **Contracts:** RATE OF INTEREST. The mortgage bond made the subject of said suit drew interest at six per cent per annum from date until maturity, and ten per cent per annum after maturity. *Held*, That a decree based on said bond drawing interest at seven per cent per annum was not one of which the mortgagor could complain.

5. **Negotiable Instruments:** RATE OF INTEREST. Where a note provides for a lawful rate of interest from date until maturity and a higher and lawful rate of interest afterwards, the rate of interest which the note draws from its date to maturity is the contract rate for that time; and the rate which the note draws after maturity is the contract rate from that date within the meaning of section 3, chapter 44, Compiled Statutes, 1893. First point of the syllabus in *Richardson v. Campbell*, 34 Neb., 181, overruled.

6. **Contracts:** JUDGMENTS: RATE OF INTEREST. Said section 3 construed and *held*, (1) that where parties to a contract for the payment of money have not agreed upon any rate of interest or agreed upon a rate less than seven per cent, the judgment based on such contract draws interest at the rate of seven per cent per annum from the date of its rendition; (2) that where the parties to a contract for the payment of money have agreed upon a rate of interest lawful, greater than seven per cent, the judgment based on such contract will draw the contract rate of interest.

APPEAL from the district court of Douglas county. Heard below before FERGUSON, J.

*George W. Shields,* for appellant, cited: *Cockle Separator Mfg. Co. v. Clark,* 23 Neb., 702; *Arnold v. Badger Lumber Co.,* 36 Neb., 841; *Hapgood v. Ellis,* 11 Neb., 131; *Burge v. Gandy,* 41 Neb., 149.

*Wharton & Baird, contra,* cited: *Johnson v. Missouri P. R. Co.,* 18 Neb., 690; *School District v. Caldwell,* 16 Neb., 68; *Van Sant v. Butler,* 19 Neb., 351; *Bell v. White Lake Lumber Co.,* 21 Neb., 525; *Dillon v. Russell,* 5 Neb., 484.

*Mahoney, Minahan & Smyth, McClanahan & Halligan, John P. Breen, William A. Redick,* and *Howard B. Smith,* also for appellees.

RAGAN, C.

William F. Havemeyer and W. F. R. Mills (the latter as receiver of the Hamilton Loan & Trust Company) brought this suit in equity in the district court of Douglas county, making William J. Paul, the Phenix Loan Association, George J. Paul, Fred Reumping, the Midland State Bank, George B. Christie, George L. Green, William D. Mead, Jr., and a large number of other persons whose connection with this case is immaterial here, parties defendant. Said William J. Paul had executed two mortgages to the Hamilton Loan & Trust Company, and it had assigned one of said mortgages to Havemeyer. The suit was brought to foreclose these two mortgages. The record does not disclose, nor is the inquiry material here, why or upon what theory Havemeyer and the receiver of the loan and trust company brought this action jointly. The action was brought on the 8th day of January, 1894, and a summons was issued for all the parties made defendants. This

summons was returned on the 13th of January duly served on George J. Paul, the Midland State Bank, and Fred Reumping only. None of the other above mentioned parties made defendants to the action, so far as the record shows, were ever served with process. The answer day fixed by the summons was February 12, 1894. On the 8th of February, 1894, George J. Paul filed his answer to the petition of Havemeyer and Mills, traversing its averments, and setting out that he was the owner of the the mortgaged premises, having become such at a date subsequent to the date of the mortgages being foreclosed. On the 30th of January, 1894, the Midland State Bank filed its answer and cross-petition claiming a lien upon the mortgaged premises. On the 15th of March, 1894, by leave of the court, but without any notice thereof ever having been served upon or given to George J. Paul, Havemeyer filed a supplemental petition in the action, setting out that since the bringing of the suit, in order to protect his mortgage lien he had paid out $222.77 as insurance premiums on the mortgaged premises, and prayed that he might be given a lien for said sum and interest against the mortgaged property. On the 24th of April W. D. Mead, Jr., filed an answer and a cross-petition claiming a lien upon said mortgaged property. On the 25th of April George L. Green filed an answer and a cross-petition claiming a lien. On the 27th of April George B. Christie filed an answer and a cross-petition claiming a lien against said property. And on the 16th of June the Phenix Loan Association filed an answer and a cross-petition claiming a lien against said mortgaged property. It is to be observed that these last four answers and cross-petitions were filed after the answer day and without notice to George J. Paul or the other parties to the suit. The record does not disclose that George J. Paul ever appeared in the case, either personally or by counsel, after the filing of his answer on February 8 until after the decree. The answer of Fred Reumping, if in-

deed he ever filed one, does not appear in.the record.   On
the 27th and 28th days of June, 1894, the court heard the
evidence in the case, Havemeyer, Mills, the Midland State
Bank, Mead, Jr., Green, Christie, and the Phenix Loan
Association appearing.   George J. Paul did not appear on
the trial, either in person or by attorney.   On the 30th day
of June, 1894, the court made the following findings:
(1) That there was due Havemeyer on his mortgage bond
and coupons, and for insurance paid since the bringing of
the suit, $37,415.92, and that he had a first lien upon the
mortgaged property; (2) that there was due Mills, receiver,
on his mortgage $1,104.24, which was a second lien upon
the mortgaged property; (3) that there was due the Phenix
Loan Association on the bonds and mortgages set out in its
answer $12,420.30, which was a third lien upon the mort-
gaged property; (4) that there was due Fred Reumping on
the judgment set out in his answer and cross-petition $496,
which was a fourth lien; (5) that there was due William
D. Mead, Jr., on the judgment set out in his answer and
cross-petition $2,184.24, with seven per cent interest thereon
from December 29, 1890, and costs, taxed at $333.16,
which was a fifth lien on the premises; (6) that there was
due the Midland State Bank on the judgment set out in its
answer and cross-petition $419.80, with interest thereon at
ten per cent per annum from January 6, 1891, which was
a sixth lien on the premises; (7) that there was due G. L.
Green on the judgment set out in his answer and cross-
petition $65, with interest at seven per cent per annum
from May 11, 1891, which was a seventh lien; (8) that
there was due George B. Christie on the judgment set out
in his answer and cross-petition $2,013.33, which was an
eighth lien.   The decree provided that unless the said
sums found due should be paid within twenty days that
the mortgaged premises should be sold and the amounts
found due paid out of the proceeds of said sale.   To re-
verse this decree George J. Paul has appealed.

1. The first complaint of the appellant relates to the action of the court in including in the amount found due Havemeyer the amount alleged by him to have been paid for insuring the mortgaged property after the bringing of the suit.  Section 149 of the Code of Civil Procedure provides: "Either party may be allowed, on notice, and on such terms as to costs as the court may prescribe, to file a supplemental petition, answer, or reply, alleging facts material to the case, occurring after the former petition, answer, or reply."  The claim of Havemeyer for payments made for insurance on the mortgaged property after the bringing of this action was a separate and independent cause of action and one that arose subsequent to the bringing of this suit, and was properly presented to the court by a supplemental petition.  But we are of the opinion that the learned judge erred in permitting Havemeyer to file this supplemental petition without notice thereof to George J. Paul and other parties to the action who would be affected thereby.  Paul, having been duly served with summons, was bound to take notice of any reply to such answer which Havemeyer might make, but he was not compelled to take notice of the supplemental petition filed in the case by Havemeyer.  If the record disclosed that Paul was present in court and consented to the filing of this supplemental petition, that would of course be a waiver of his right to insist upon a formal notice thereof, but the record contains no such disclosure.  If it appeared from the record that Paul appeared either in person or by counsel and participated in the trial of the case, perhaps he could not now be heard to complain of his want of notice of the filing of such supplemental petition.  But as already stated the record does not show that Paul, either in person or by attorney, was present or participated in the trial of the case.  So far as the record shows, Paul had no knowledge whatever of the existence of the supplemental petition in question until after the rendition of the decree appealed from.  By the

summons served upon Paul he was notified that he had been sued by Havemeyer and that he was required to appear and answer his petition by the 12th of February. He appeared and he answered ; and he had a right to presume that the court would render no other or different decree in favor of Havemeyer than that prayed for by him in his original petition. If a cause of action accrued to Havemeyer against the mortgaged property subsequent to the date of the filing of his petition, and if he desired a judgment or decree on such cause of action, he pursued the proper course in presenting the matter to the court by a supplemental petition. But Paul, without notice of the filing of such supplemental petition, or without some act of his by which he waived such notice, is no more concluded and bound by the judgment rendered thereon than he would have been by the decree rendered in favor of Havemeyer on his original petition, had such decree been rendered against the property without any summons having been served on him. Paul was not bound to take notice of the filing of the supplemental petition of Havemeyer because of the fact that he had been served with a summons in the original action and had appeared and answered. He was no more bound to take notice of the supplemental petition than if he had not answered; and it will scarcely be questioned that Paul, had he not appeared in the action, though duly served with summons, would not have been bound by the decree which the court rendered on the supplemental petition of Havemeyer, in the absence of all notice thereof. By the filing of the supplemental petition Havemeyer, in effect, brought another suit against the mortgaged property and all the parties to the original action; and it is only because the cause of action set out in the supplemental petition was connected with and grew out of the subject-matter on which the original foreclosure suit was based that Havemeyer could present to the court for adjudication such cause of action by supplemental pleadings. But this decree in favor

of Havemeyer is erroneous for another reason. As already stated, the amount of the lien given Havemeyer was $37,-415.92. It appears from the evidence in the bill of exceptions that all of this decree, except $224.92, was made up of amounts due Havemeyer from William J. Paul on certain bonds and coupons, but $224.92 of the decree is for money which Havemeyer alleged in his supplemental petition he had paid out as premiums for insurance on the mortgaged property after the bringing of his foreclosure suit. There is no evidence in the bill of exceptions which shows, or tends to show, that Havemeyer, or any one for him, had paid out any sum of money whatever for insuring the mortgaged property after the bringing of the suit. The solicitor for Havemeyer testified on the hearing that he had made a computation of the amount due his client up to the first day of the term of court at which the decree was rendered, and that the amount was $37,415.92, that that amount included $224.77 of insurance paid, and interest thereon of $2.15; and this is all the evidence in the record on the subject to support the decree rendered in favor of Havemeyer on his supplemental petition. It is hardly necessary to remark it is insufficient.

2. After February 12, 1894, the answer day fixed by the summons issued in the case and served on George J. Paul, to-wit, on April 24, 25, 27, and June 16, Mead, Jr., Green, Christie, and the Phenix Loan Association, respectively, on said dates, without ever having been served with process in the case, some of them by leave of court and others without such leave, filed their answers in the nature of cross-petitions claiming liens upon the mortgaged premises, and were by the decree of the court awarded liens against said property as already stated. The next complaint of the appellant is directed against the decrees awarded said last four named parties. Appellant's contention is that the decrees are erroneous as against him because the answers or cross-petitions of said parties were filed out of time

without any notice to him.    It is to be remembered in this connection that George J. Paul was duly served with summons, and before the answer day fixed thereby filed his answer to the petition of Havemeyer and Mills, the plaintiffs below; that aside from this the record discloses no appearance at any time in the action by Paul, either in person or by attorney.    The answers of Mead and others were in effect suits against Paul and the mortgaged property brought for the purpose of establishing certain liens against said property.    Was Paul bound to take notice of the answers filed by his co-defendants Mead, Green, Christie, and the Phenix Loan Association because of the fact that he, Paul, had been duly served with process in the action and had appeared and answered the petition of the plaintiffs?    We think not.    If this suit had been brought under the old chancery practice prevailing before the adoption of the Code, and Mead and others had been made defendants to the action of Havemeyer and Mills and served with process in that action, before Mead and others would have been allowed to file their cross-petitions or cross-bills for affirmative relief, they would have been first required to answer the bills or petitions of Havemeyer and Mills; and to their cross-petitions or cross-bills they would have been compelled to make Havemeyer and Mills, the plaintiffs in the original action, and all the defendants in such original action, defendants, and notified them of the filing of such cross-petitions or cross-bills by the process of the court in the nature of a summons.    The Code has changed this practice, but it has not abolished the principle that a party is entitled to notice of judicial proceedings instituted against him or his property.

In *Hapgood v. Ellis,* 11 Neb., 131, it was held: "In a foreclosure suit where several parties are made defendants as lien-holders, subsequent purchasers, or lessees of the mortgaged premises, their several answers claiming rights as such lien-holders, subsequent purchasers, or lessees may

be regarded also as cross-petitions for relief as against their respective co-defendants as well as against the plaintiff; and any such defendant, regularly served with process, who fails to answer any material allegation contained in the answer of his co-defendant is bound thereby as well as by the decree founded thereon, and unless he appeals therefrom the same becomes as to him *res adjudicata*." But an examination of that case leads us to the conclusion that the learned judge who wrote the opinion meant no more than this: That the defendant to an action duly served with process therein is bound by or charged with notice of the averments of the answer of his co-defendant who had answered within the time fixed by law.

In *Cockle Separator Mfg. Co. v. Clark*, 23 Neb., 702, the rule was thus stated: "While all parties to an action are bound to take notice of pleadings properly filed within the time required by law, yet where a party in default obtains leave of court to file a pleading affecting other parties, the parties so affected should be notified of the filing of such pleading."

*Carlow v. Aultman*, 28 Neb., 672, was a suit brought by one Curtis against Carlow to foreclose a mortgage. Aultman & Co. was made a party defendant and service obtained upon it by publication and the answer day fixed for May 17. Carlow was personally served with a summons, and the answer day for him fixed on May 10. On the 17th of May, Aultman & Co. appeared and filed its answer in the nature of a cross-bill, asking for affirmative relief against Carlow. It was urged in this court that the judgment or decree pronounced in favor of Aultman & Co. against Carlow was erroneous because no notice of the filing of its cross petition by Aultman & Co. was given to Carlow, but the court, speaking through the present chief justice, said: "When a defendant in an action files his answer and cross-petition within the time fixed by law, he is not required to give to the other parties to the suit any notice of the filing of such pleading."

*Arnold v. Badger Lumber Co.*, 36 Neb., 841, was an action brought by the lumber company to foreclose a mechanic's lien. Arnold, the owner of the real estate, was made a defendant and duly served with summons. The answer day, as fixed by the summons, was April 22. A number of other persons were made defendants to this action, who were also served with summons at the same time that Arnold was, and the time fixed for them to answer was the same. Arnold made no appearance to the action, and a decree was rendered against her by default. After the 22d of April, the answer day, a number of the co-defendants of Arnold, by leave of court or otherwise, filed answers in the nature of cross-petitions in the action, claiming liens against the property of Arnold, and were by the court awarded liens as prayed. On appeal from this decree by Arnold the court said: "After answer day, if a defendant files a pleading, in the nature of a cross-petition, against his co-defendants who have not appeared in the action, such co-defendants can be concluded in respect thereto only by their appearance, or after the service on them of a notice in the nature of a summons, as to such pleading."

These authorities then established this rule: That a party made defendant to an action and duly served with process is charged with notice of whatever answer any of his co-defendants may file in the action only when such answer is filed by such co-defendant within the time required by law. If Mead and others had been served with the summons that was served upon Paul, and had filed their answers on or before February 12, or if, on or prior to that date, they had obtained from the court an order extending the time for them to file their answers and had filed them within the time given, then doubtless Paul would have been charged with notice of the averments in such answers. If Mead and others had been served with notice of this suit by publication and had filed their answers

within the time fixed therefor by the publication notice, or on or prior to the expiration of that time had obtained an extension of time in which to answer, and had answered within such extension, then doubtless Paul would have been charged with notice of the averments of their answers. If the record disclosed that Paul or his counsel consented to the filing of these answers of Mead and others, then of course such consent would amount to a waiver of a formal notice thereof, but the record contains no such disclosure. If it appeared from the record that Paul, either in person or by counsel, had appeared and participated in the trial of the case, it may be that such appearance and participation would estop him from insisting that the decrees rendered against him and his property in favor of Mead and others were erroneous, because the answers and cross-petitions on which they were based were filed out of time and without notice to him, but no such fact appears in the record.

3. The next complaint which we notice is that the decree pronounced in favor of Fred Reumping is not sustained by sufficient evidence. The decree of the district court is as follows: "The court further finds that there is due the defendant Fred Reumping on his judgment described in his answer and cross-petition the sum of $496, and interest thereon from December 4, 1890, at the rate of ten per cent per annum, and the costs of suit, for which the said Reumping is entitled to a valid fourth lien on said premises from December 27, 1890." As already stated, the answer and cross-petition of Reumping, if one was ever filed, is not in the record. The evidence in the bill of exceptions to support this decree is as follows: "James H. Adams offered proof on the claim of Fred Reumping." The court: "What is the amount due Mr. Adams?" Mr. Adams: "$496; interest ten per cent from December 4, 1890, and it is a lien from December 27, 1890, the date of the filing of the transcript. This is the judgment of Fred Reumping." Then follows: "P. 72," referring to page 72 of the bill of exceptions, which is as follows:

Havemeyer v. Paul.

"Execution Docket 1, page 258.

| Parties. | Date of Judgment. | Amt. Received. | Amt. of Costs. | Total Amt. of Judgment, Int. & Costs. |
|---|---|---|---|---|
| Fred Reumping | County Court | $496.20 | $3.15 | —— |
| v. | Douglas Co. | | .75 Inc. L. C. | —— |
| William J. Paul. | Dec. 4, 1890. | | .50 file pd. | —— |
| | Interest 10 %. | | .10 " | —— |
| | | | 2.00 Ex. & ret. | —— |

"1890, Dec. 27.  Filed transcript.  Filed præcipe for execution.  Issued execution.

"June 17.  Execution returned indorsed as follows, to-wit:

"Received this writ December 27, 1890, and, not being able to find any property of the within named defendant in Douglas county on which to levy, the same is returned wholly unsatisfied.        JOHN F. BOYD, *Sheriff*,

"By HENRY -GREBE, *Deputy*.

"Fees, $1.10.

"Execution Docket 1, page 258."

It would seem that Reumping owned a judgment against William J. Paul and he claimed that such judgment was a lien upon the real estate in controversy in this action. If we assume that he filed an answer, as the decree of the district court indicates, setting out this judgment, the evidence offered in his behalf did not prove the averments of his cross-petition or answer. (*Burge v. Gandy*, 41 Neb., 149; *Morrison v. Boggs*, 44 Neb., 248.)  A judicial record of this state may be proved by the producing of the original, or by a copy thereof, certified by the clerk or the person having the legal custody thereof, authenticated by his seal of office, if he have one. (Code of Civil Procedure, sec. 413.)

4. Havemeyer's original petition was based on a real estate mortgage bond due five years from date, drawing interest at the rate of six per cent per annum, payable semi-annually, until maturity, and ten per cent per annum, payable semi-annually, after maturity.  The district court

29

awarded Havemeyer interest on the decree rendered on this
bond at seven per cent per annum from the first day of the
term of court at which the decree was rendered.    The ap-
pellant assails the correctness of this decree in this respect,
his contention being that interest should have been awarded
Havemeyer on this decree at the rate of six per cent only.
By the law in force on the subject of interest prior to the
act of June 1, 1879, the present law, the highest legal con-
tract rate of interest was twelve per cent per annum ; and
where no rate of interest was fixed by the contract, it drew
ten per cent per annum ; and judgments and decrees for the
payment of money from the date of the rendition thereof
drew interest at the rate of ten per cent. (See General
Statutes, 1873, ch. 34.)

*Gregory v. Hartley*, 6 Neb., 356, was decided under the
old statute.    In that case the note appears to have drawn
interest at the rate of seven per cent per annum, payable
semi-annually, until maturity, and ten per cent thereafter.
The district court by its decree awarded the plaintiff below
interest thereon at the rate of twelve per cent, and on error
proceedings to this court the decree was reversed, the court
holding that there was no authority under the statute to
render a decree drawing twelve per cent interest, except in
cases where the debt upon which the decree was predicated
was drawing that rate of interest.    But the court did not
decide, so far as the recorded opinion shows, what rate of
interest the district court should have awarded the com-
plainant in the decree.

In *Weyrich v. Hobelman*, 14 Neb., 432, the note drew
interest at ten per cent per annum from date until matu-
rity, and contained a provision that if not paid at maturity
it should draw interest at twenty-four per cent per annum
thereafter.    The court construed the provision for twenty-
four per cent per annum from maturity as a penalty, and
held that the holder of the note was entitled to a judgment
for the face of his note with interest thereon at the rate of

ten per cent per annum. The question raised and argued in the case seems to have been whether the note was usurious, whether the holder of the note was entitled to a judgment for the face of his note with ten per cent interest from its date until payment; and whether he was entitled to have such judgment draw interest at the rate of ten per cent per annum from its rendition is not decided in the case, although such seems to be the fair inference.

In *Kellogg v. Lavender*, 15 Neb., 256, the note drew interest at the rate of twelve per cent per annum from date. The district court gave the holder of the note interest at twelve per cent from its date to maturity; from maturity to June 1, 1879, the date of the taking effect of the present interest law, ten per cent; and from June 1, 1879, seven per cent. On appeal this court modified the decree of the district court and gave the holder of the note interest thereon at the rate of twelve per cent per annum from the date of the note to the date of the decree. What rate of interest the decree should draw does not appear to have been made a question in the case, nor is any opinion expressed by the court as to what rate of interest the decree should draw.

In *Hager v. Blake*, 16 Neb., 12, the note drew interest at the rate of twelve per cent per annum from date until paid, and contained a provision that overdue interest should draw interest. The question presented by the case was whether the provision for compound interest made the note usurious. The court, after disposing of that question by holding that such provision did not render the contract usurious, cites *Kellogg v. Lavender*, 15 Neb., 256, as an authority for the proposition that the contract rate mentioned in the note continues until the payment thereof, and said : "The rate of interest agreed upon in a written contract, not in excess of that allowed by statute, continues until payment."

In *Upton v. O'Donahue*, 32 Neb., 565, a case decided.

under the present interest law, the note drew interest at the rate of six per cent per annum, payable semi-annually, until maturity, and ten per cent after maturity. The court held that the agreement to pay interest at ten per cent per annum after the maturity of the note was in the nature of a penalty and did not increase the rate of interest previously agreed upon by the parties, again citing *Weyrich v. Hobelman*, 14 Neb., 432. The decree was reversed and the cause remanded to the district court with instructions to enter a decree for the amount of the note and six per cent interest thereon.

In *Richardson v. Campbell*, 34 Neb., 181, the construction of the present interest law was again before the court, and in the first point of the syllabus it is said: "Where money has been loaned at a specific rate of interest, as ten per cent, and the note contains a provision that if not paid at maturity the maker shall pay twelve per cent thereafter, the higher rate is in the nature of a penalty and the contract rate will continue as before the maturity of the note." This last case lays down the rule that where a note draws interest at six per cent per annum from date to maturity and a higher lawful rate of interest afterwards, the higher rate is to be regarded as a penalty and not enforceable, and that the rate which the note drew from its date to maturity is to be regarded as the contract rate fixed by the parties. It is to be observed that the rule here announced is predicated on *Weyrich v. Hobelman*, 14 Neb., 433, but in that case the rate of interest which the note drew after maturity was twenty-four per cent, or an unlawful rate, while in *Richardson v. Campbell*, *supra*, the rate of interest after maturity was a lawful one. It may be that if a promissory note provides for the payment of an unlawful rate of interest after its maturity the courts would regard such unlawful rate of interest as a penalty and refuse to enforce it, but no reason exists for refusing to enforce the lawful contracts of parties in the absence of fraud, mistake, or their being

unconscionable.    We think, therefore, that the rule as laid down in the first point of the syllabus of *Richardson v. Campbell, supra,* is too broad, and that the correct rule is this: Where a note provides for a lawful rate of interest from date to maturity and a higher and lawful rate of interest afterwards, that the rate of interest which the note draws from its date to maturity and the rate which the note draws after maturity are both the contract rates of the parties, and since they are lawful, are enforceable.

Section 3, chapter 44, Compiled Statutes, 1893, provides, in substance, that all decrees and judgments for the payment of money shall draw interest at the rate of seven per cent per annum from the date of the rendition thereof until paid, but if such judgment or decree is founded upon a contract, by the terms of which a greater rate of lawful interest shall have been agreed upon, then such judgment or decree shall draw the same rate of interest which the contract on which such judgment or decree is based drew. In the case under consideration, as already stated, the bond drew interest at the rate of six per cent per annum from date until maturity and ten per cent after maturity.    We conclude that the contract rate between the parties to the bond was six per cent per annum to its maturity and ten per cent thereafter, and that the decree rendered thereon should draw interest at the rate of ten per cent.    The construction placed on said section 3 by the court is: Where parties to a contract for the payment of money have not contracted for any rate of interest, or contracted for a rate less than seven per cent per annum, a judgment based on such contract will draw interest at the rate of seven per cent per annum from the date of its rendition.    Where the parties to a contract for the payment of money have agreed upon a rate of interest lawful greater than seven per cent per annum, the judgment based on such contract will draw the contract rate of interest.    The precise question is this: What rate of interest does a judgment draw based on a

contract for the payment of money which by its terms draws less than seven per cent per annum? This question has never been presented to nor passed upon by this court. The opinion of the writer is that where parties to a contract for the payment of money have agreed upon a rate of interest lawful, and such contract is reduced to judgment, the judgment should bear the same rate of interest which the contract drew, for the reason that though the contract is merged in the judgment, still a judgment is not the making of a new contract for the parties, but one step which the law takes to carry out the contract made. The district court did not err as against the mortgagor in allowing Havemeyer interest at seven per cent per annum on the decree rendered in his favor on the mortgage bond.

For the other errors mentioned the entire decree is reversed and the cause remanded to the district court for further proceedings, and with instructions to tax the entire costs of this case, including the costs of this appeal, to Havemeyer, Mead, Jr., Green, Christie, Phenix Loan Association, and Reumping, in such proportions as the court may deem just, and to require each of said parties to pay the amount of costs taxed against him as a condition precedent to such party's right to be further heard in this case.

REVERSED AND REMANDED.