[L. A. No. 1435.  Department One.—December 9, 1905.]

## J. B. YOUNG, Respondent, v. NEW STANDARD CONCEN-TRATOR COMPANY et al., Appellants.

CORPORATION—CONVERSION—REFUSAL TO TRANSFER STOCK—PURCHASE BY PLEDGEE AT DELINQUENT SALE.—Where a pledgee of the stock of a corporation buys it in at a delinquent assessment sale at much less than its real value, in pursuance of a verbal agreement then made with the officers of the corporation that if permitted so to purchase it without competition in bidding at the sale, he would continue to hold the stock as collateral security and would account for the proceeds of any sale thereof to the pledgor, the corporation constitutes itself a trustee for the purpose of seeing that the proceeds of a sale of the stock are properly applied, and is not liable as for a conversion in refusing to transfer the stock on its books in pursuance of a sale made in contravention of the terms of such agreement; and in an action against the corporation for a conversion in refusing to transfer the stock, evidence of the terms of such agreement is admissable.

APPEAL from an order of the Superior Court of the County of Los Angeles and from an order refusing a new trial.  Waldo M. York, Judge.

The facts are stated in the opinion of the court.

Jones & Weller, for Appellants.

W. H. & C. L. Shinn, and J. B. Young, for Respondent.

VAN DYKE, J.—This is an appeal from a judgment in favor of the plaintiff, and also from an order denying defendants' motion for a new trial. During the progress of the trial the action was dismissed as to defendants McCabe and Doane, and judgment went against the corporation only.

The action is brought to recover damages for an alleged conversion on the part of the defendant corporation and its refusal to register and transfer certain stock which the plaintiff claimed to own and had agreed to sell to another party. The stock involved in the controversy was transferred to the plaintiff as collateral security for the payment of two promissory notes made by E. W. Doane and James R. Townsend. An assessment of two cents per share was levied on the said stock; and becoming delinquent the stock was advertised for sale. At the assessment sale plaintiff bid in the stock, paying the assessment on the stock held by him as well as that held by his brother as security, and certificates were issued to both of them in their own name for the number of shares so bought. Thereafter the plaintiff claimed to have sold the stock so bid in to one Davis, and demanded a transfer on the books to him, which was refused, and by the refusal of the corporation to make the transfer, it is alleged in the complaint, the defendant thereby converted the stock to its own use.

The evidence at the trial showed that at the time of such sale upon the delinquent assessment there was some sort of an agreement made between the plaintiff and his brother with some of the officers of the corporation in regard to the disposition of the stock in the event that they were allowed to purchase it in. The plaintiff on cross-examination stated that the stock originally pledged to him as collateral he acquired title to under and by virtue of a sale for delinquent assessment; that is, 13,900 shares of the stock. "That represented stock that I held before as collateral security for the notes. Every certificate of stock introduced in evidence as being issued to me represented stock that had been, prior to that time, held by me as collateral security for loans. The stock that was issued on the 15th of March to J. C. Young represented stock that had been pledged to J. C. Young, my

brother, by E. W. Doane and James R. Townsend, and bought by him at the assessment sale. I knew this at the time the stock was indorsed in blank by J. C. Young and delivered to me, and I also knew it at the time I served the written notice on the defendant, asking a transfer to Davis. I knew it at the time the stock was pledged to my brother, and have known of the transaction in connection with the stock ever since, up to the present time. I attended the sale for delinquent assessment at the office of the company. At the time of the assessment sale at the office of the company the question in regard to the ownership of any of this stock was not discussed with Doane or Townsend or any of the officers of the company that I recollect of; not talked over at all at the assessment sale with reference to the stock I bought at that sale; but it was talked over in reference to the 900 shares that was not sold on assessment, but was left in my hands as collateral security. I don't recollect saying at the time of the sale that I would have to buy the stock in order to protect my security, but I might have said so." Thereupon the defendant offered to prove that in order to prevent competition in the bidding of said stock at said sale the plaintiff stated that this was his only security for his notes, and requested to be allowed to purchase the same, and agreed to still hold it as collateral, as before, and that upon such representations others who were present at said sale ceased bidding, and the plaintiff was allowed to purchase said stock at a little over two cents a share. Upon the objection of the plaintiff the court refused to allow this evidence to be given, and the defendant took an exception to the ruling. The president of the corporation, P. B. McCabe, was asked, on behalf of the defendant, what, if any, agreement was made after the sale with Mr. Young in regard to his sale of certificates of shares issued to him, and under what circumstances they were to be transferred, the answer to which, upon objection of the plaintiff, was refused to be admitted. He was also asked, while acting as president of the company, in the office of the company, what, if any, understanding he had with Mr. Young about his holding or disposing of those shares of stock, the answer to which was also refused upon objection of the plaintiff. Defendant further offered to prove by the president of the company, McCabe, and by others that after

the sale the plaintiff requested the transfer of the stock to
him, and stated to and agreed with Mr. McCabe that in the
event of the issuing of the stock to him in his own name he
would still hold it as collateral security, and in the event of
the sale he would apply sufficient of the proceeds of the
purchase price on his note and collateral agreement to pay
the note, and if there was any surplus left he would leave it
with Doane and Townsend, the makers of the note, and that
he would not ask a transfer of the stock unless these pay-
ments were made, and at the same time he left with McCabe,
the president of the company, a copy of the agreement and
note.   To these offers the plaintiff objected, and the court
sustained the objection, and defendant excepted.   Mr. Doane,
one of the pledgors of the stock, testified that he told the
plaintiff if the proceeds of this sale were applied on the
note he would be perfectly willing to have the stock trans-
ferred.   He asked the plaintiff if he intended to keep the
difference between the price of the stock and the amount
due on his note, and he said he did (and thereupon the
pledgors notified the company not to make the transfer).
Defendant further offered to show an agreement between the
plaintiff and the president of the company and Doane and
Townsend similar to that already stated, an objection to which
offer by the plaintiff was sustained by the court.   The delin-
quent sale referred to took place on March 15, 1902, and on
June 9, 1902, the testimony shows said stock to have been worth
fifty cents per share, and there is nothing to show that the
stock was not worth fifty cents per share on March 15th, at
the time of the alleged understanding between the plaintiff
and the officers of the corporation in reference to bidding in
the stock.   In fact, plaintiff testifies: "It was worth fifty
cents a share then, and it is worth that now."   Defendant
also offered to prove that contemporaneously with the issuance
of the certificates of stock to the plaintiff he agreed with the
corporation and its board of directors that he would hold the
stock as collateral security for the indebtedness of Doane and
Townsend to him, and that the company was not to permit
any transfer of the stock, except as a credit on the notes of
the purchase price.   The court also sustained an objection of
the plaintiff to this offer, and the defendant excepted.

It was stipulated that the notes and collateral agreement

were to be deposited with the president of the company, and the plaintiff in 'his notice mentions the fact that the notes were on file with the company. It would seem that this was done in pursuance of the agreement made by the plaintiff when bidding on the stock to prevent competition. If this understanding and agreement which defendant offered to show were had between the plaintiff and the corporation and its officers, the defendant was thereby constituted a sort of trustee for the purpose of seeing that the proceeds of the sale of the stock were properly applied, and its refusal to transfer the stock at the request of the plaintiff, who at the time claimed to own it in his own right, and had effected the sale thereof to one Davis, as already stated, was not a conversion of the stock as alleged in the complaint and found by the court, and the defendant clearly had the right to show this, for it was one of the main issues in the case, whether the action of the defendant in the premises amounted to conversion. It is alleged in the complaint that the defendant in its refusal to transfer the stock converted the same to its own use, and this, which is the material allegation in the complaint, is denied by the answer. Therefore, evidence was admissible to show any circumstances that would justify or excuse the refusal to transfer the stock on demand of the plaintiff, and the exclusion of the offered evidence that plaintiff agreed to continue holding the stock as pledgee after the assessment sale, and that it was agreed that the stock should not be transferred unless provision was made for the payment of the notes of Doane and Townsend out of the proceeds of the sale, was clearly error. The authorities cited by respondent do not militate against this. In Morawetz on Corporations (sec. 208), cited by respondent, it is said: "If the company refuses to recognize the real owner, or refuses to deliver him a new certificate, he may sue the company for the value of the shares." But in Cook on Corporations the true rule is laid down as follows: "Where a corporation has notice that a stockholder holds his stock as trustee for another, it is bound to refuse a register of the trustee's transfer until it is satisfied the trustee has power to make the transfer. If the corporation allows the transfer, and the trustee had no power to make it, the corporation is liable to the *cestui que trust.*" (4th ed., vol. 1, sec. 327.)

For the refusal to admit the evidence offered on the part of the defendant, under the circumstances of the case, the judgment and order denying a new trial should be reversed, and it is so ordered.

Shaw, J., and Angellotti, J., concurred.