**CLARKE et al. v. BOYSEN et al., and nine other cases.**

Nos. 40–48, 165.

Circuit Court of Appeals, Tenth Circuit.

Feb. 17, 1930.

Rehearing Denied May 14, 1930.

Fred R. Wright and Clarence L. Ireland, both of Denver, Colo. (Gail L. Ireland and R. H. Blackman, both of Denver, Colo., on briefs), for appellants in No. 40 and appellees in Nos. 41, 43, 46, 48.

Clarence L. Ireland, of Denver, Colo. (R. H. Blackman, of Denver, Colo., on the briefs), for appellants in Nos. 42 and 45.

Fred R. Wright, of Denver, Colo. (Gail L. Ireland, of Denver, Colo., on the briefs), for appellants in Nos. 44, 47, and 165.

Andrew C. Scott and John L. Rice, both of Denver, Colo. (J. C. James, of Chicago, Ill., and J. Q. Dier, of Denver, Colo., on the briefs), for appellants in Nos. 41, 43, 46, and 48, and for appellees in Nos. 40, 42, 44, 45, and 47.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

The above ten appeals are prosecuted from the decrees in four cases in the United States District Court for the District of Wyoming, numbered 288, 980, 1320, and 1513, respectively, in the lower court.

In No. 288, there are two appeals: No. 40 by John T. Clarke, hereinafter referred to as Clarke, and No. 41 by the Chicago, Burlington & Quincy Railroad Company, hereinafter called the Burlington Company, and Big Horn Railroad Company.

In No. 980, there are two appeals: No. 42 by Clarke and No. 43 by the Burlington Company, and Big Horn Railroad Company.

In No. 1320, there are four appeals: No. 44 by Pogson and Smith, trustees under a

mortgage; No. 45 by Henry T. Clarke and Ella R. Clarke, holders of bonds secured by such mortgages, who intervened therein, and No. 46 by the Burlington Company, and Big Horn Railroad Company; No. 165, by Pogson and Smith, as trustees, from an order denying leave to file a bill of review therein.

In No. 1513, there are two appeals: No. 47 by Clarke, Midwest Power & Light Company, Clarke Land & Loan Company, H. F. Clarke, Jr., Henry T. Clarke, Jr., Maurice G. Clarke, Ella R. Clarke, G. C. Whittal and Thomas Hunter, receiver of the Big Horn Power Company, who were defendants therein; and No. 48 by the Burlington Company, plaintiff therein.

### History of Prior Litigation.

Cause No. 288, in the lower court, in which appeals Nos. 40 and 41 have been prosecuted, was commenced in 1906 by William A. Broatch and others against Asmus Boysen, hereinafter referred to as Boysen, and others to compel specific performance of a contract and to impress a trust, in favor of Broatch and others, upon 680 acres of land. In that suit, the decree went for the defendants and complainants appealed.

The court of appeals found the following facts: On April 1, 1899, Boysen signed a written agreement which recited that Clarke, Boysen, four unknown persons and six other persons had entered into such agreement for the purpose of leasing land on the Wind River or Shoshone Indian reservation in Wyoming; that each of the parties thereto, excepting Joseph Weis, Robert C. Wertz, Jacob E. House, Chas. J. Woodhurst, Adam Morell and one of the unknown persons, should pay $2,000 each, in installments, into a certain trust fund; that the six persons, last above referred to, should receive a 1/16th interest in the trust for the consideration of $1.00 and other consideration, which they had theretofore contributed; that the leases should be taken in the name of Boysen and upon the approval of such leases he should assign them to Adam Morell, as trustee for the parties to such agreement. Thereafter, on July 1, 1899, Boysen secured a coal mining lease on 178,000 acres of land on such reservation. This lease was approved October 4, 1899. In March, 1905, Congress passed an Act entitled, "An act to Ratify and amend an agreement with the Indians residing on the Shoshone or Wind River Indian Reservation in the State of Wyoming and to make appropriations for carrying the same into effect." See 33 Stat. 1016. This Act contained the following proviso:

"And provided, That nothing herein contained shall impair the rights under the lease to Asmus Boysen, which has been approved by the Secretary of the Interior; but said lessee shall have for thirty days from the date of the approval of the surveys of said land a preferential right to locate, following the Government surveys, not to exceed six hundred and forty [640] acres in the form of a square, of mineral or coal lands in said reservation; that said Boysen at the time of entry of such lands shall pay cash therefor at the rate of ten [10] dollars per acre and surrender said lease and the same shall be cancelled."

Pursuant thereto, and on June 27, 1906, Boysen selected and entered a tract of 680.31 acres, hereinafter called the patented tract, and on May 17, 1907, a patent therefor was issued to Boysen. On May 19, 1907, Boysen executed and delivered a deed for such land to the Asmus Boysen Mining Company, hereinafter called the Boysen Mining Company.

The court concluded, under the foregoing facts, that Boysen, upon obtaining the lease, held the leasehold estate created thereby in trust for the respective parties named in and who accepted the agreement of April 1, 1899; and that, under familiar principles of equity, such trust attached to the patented tract for which such leasehold estate was exchanged.

The court held that the agreement was binding upon those parties who accepted it and assented to its terms, and directed the District Court to dismiss the bill as to all the complainants excepting Clarke, Wm. J. Broatch, Mary F. House, personal representative and sole heir of Jacob E. House, deceased, Robert C. Wertz and Chas. J. Woodhurst.

The Circuit Court of Appeals directed that an accounting be had of the amounts expended by Boysen in acquiring the lease and the patented tract, and of any amounts he had received therefrom. It decreed that, unless Clarke and Broatch each should pay to the Boysen Mining Company the sum of $2,000, and the amount which 1/16th of such expenditures should exceed $2,000, within 60 days after the accounting was approved by the District Court, the bill should be dismissed as to them; and that, unless Robert C. Wertz and Chas. J. Woodhurst each should pay to the Boysen Mining Company the amount which 1/16th of such expenditures should exceed the sum of $2,000, within 60 days after the approval of such account, the suit should be dismissed as to them; that

the Boysen Mining Company should convey a 1/16th interest in such real estate to each of such complainants, who made their respective payments as above required; and that the Boysen Mining Company should convey to Mary F. House a 1/16th interest in such real estate. See Broatch v. Boysen (C. C. A. 8) 175 F. 702.

Joseph Weis accepted the agreement. He was made a party defendant to the original bill, but failed to appear, and a decree pro confesso was taken against him. His interest was later conveyed to Maurice G. Clarke and a suit regarding this interest is now pending in a state court of Wyoming.

This left nine unaccepted shares or interests. Appeal No. 42 from cause No. 980 has to do with the disposition of these nine shares.

The decree of the Circuit Court of Appeals established the 1/16th interest of each of the following persons: Jacob E. House, Chas. J. Woodhurst, Robert C. Wertz, William J. Broatch and Clarke. Clarke now has his original interest or share and he has purchased the shares of Broatch, Woodhurst, Mary F. House and 1/2 of the share of Wertz.

Pursuant to the directions of the Circuit Court of Appeals, an accounting was taken between Boysen, as trustee, and the other parties whose interests were established, and a decree was entered on such accounting in case No. 288. From such decree, in cause No. 288, complainants appealed. See Broatch v. Boysen, 236 F. 516. The Circuit Court of Appeals modified the decree by reducing the net amounts, required to be paid by Broatch and Clarke, to the sum of $3,972.06 each, and the net amounts, required to be paid by Woodhurst and Wertz, to the sum of $1,972.06 each.

On June 4, 1918, Clarke, in his own right and as assignee of Broatch, Wertz, Woodhurst and Mary E. House, presented to the trial court a verified supplemental bill. This bill set forth the assignments to Clarke of the interests of Broatch, Wertz, Woodhurst and House, and averred that, pending the litigation, the Boysen Mining Company had conveyed 88 acres of the patented tract to the Big Horn Power Company and had also conveyed a right-of-way to the Burlington Company; that the portion of land so conveyed was the most valuable part of the whole patented tract; that a tender of the payments required would be useless and unavailing because the Boysen Mining Company was not in a position to comply with the decree.

Thereafter, on the same day, the District Court made an order requiring the complainants in cause No. 288 to pay into court the respective amounts due the Boysen Mining Company, within ten days. The order further provided that, in the event of default in such payments, the action should be dismissed.

On June 18, 1918, Clarke, as assignee of Wertz and Woodhurst, paid into court 1/2 of the amount ordered to be paid by Wertz, that is, $986.03, and the full amount ordered to be paid by Woodhurst, that is, $1,972.06, and prayed the court to retain such payments in the registry of the court until the matter, set forth in such supplemental bill, could be adjudicated. The court denied this request and ordered the money paid to the attorney for the Boysen Mining Company.

On the same day, to-wit, June 18, 1918, Clarke, in behalf of himself and as assignee of such other interests, asked leave to file a second supplemental bill setting up a counter-claim for damages for the use and occupation of the patented tract and also asked that the damages be set off against the amount found to be due the Boysen Mining Company. The District Court refused leave to file such supplemental bill and thereupon dismissed the original bill as to Clarke's original interest and 1/2 of Wertz' original interest for failure to comply with the order to pay the money into court on account of such interests.

From these four orders, to-wit: (a) The order of June 4, 1918, requiring the money to be paid into court; (b) the decree of June 18, 1918, dismissing the suit as to Clarke and Wertz; (c) the order of June 18, 1918, directing the clerk to pay the money paid by Clarke to the attorney for the Boysen Mining Company, and (d) the order of June 18, 1918, denying leave to file the second supplemental petition, a further appeal was prosecuted by Clarke to the Circuit Court of Appeals.

On this appeal, the Court of Appeals reversed the trial court (See Clarke v. Boysen, 264 F. 492; Id., 273 F. 923), and held:

"From the filing of the lis pendens in compliance with the Wyoming statutes the land was subjected to the result of this suit, and all conveyances made after such filing were dominated by such result. The defendant mining company, after such filing, transferred the valuable portion of the land. Such transfers did not affect the legal title involved in the suit, but did seriously affect the possession and use of the land which are

the valuable fruits of title. When the deed was due from it, under the decree, it did not tender such, and, if it had done so, it had theretofore deliberately disabled itself from delivering therewith that possession which was an essential to enjoyment of the land deeded, and had so complicated and embarrassed the situation as to necessarily involve appellant in further litigation before he could make his title of any practical value. Such conduct deprived the company of all right to any compensation until this situation was so altered that appellant could obtain the real benefits of title." 264 F. pages 495, 496.

The Circuit Court of Appeals directed the District Court to reinstate the complaint; to cause repayment into the registry of the court of the amounts paid by Clarke, and "to ascertain what, if any, portion of the land decreed to appellant [Clarke] or his assignors cannot be conveyed by said company free of litigation as to such title and possession, and the value thereof; to then strike a balance between such value and the amounts decreed to be paid in by appellant and his assignors under the accounting; if such balance be against appellees, then a decree therefor, and also for deeds for such portions of the entire tract as appellants heretofore have been adjudged entitled (see 273 F. page 926) by the Asmus Boysen Mining Company or, if necessary, by a master; if such balance should favor appellees, a decree that upon payment of such balance by appellant within 60 days, accompanied by sufficient proof of the assignments claimed by appellant, deeds as above." See 264 F. 492, 496, and 273 F. 923, 926.

In its first opinion, in the last mentioned appeal, the Circuit Court of Appeals affirmed the order of the District Court denying leave to file the second supplemental bill. On rehearing, however, it modified its first opinion (See Clarke v. Mining Co., 268 F. 535, 536) and held:

"That the decree of the trial court, denying leave to file the second supplemental petition, be reversed, for the sole purpose of permitting appellant an opportunity to recover any damages arising from deprivation of the property involved, which damages, if any, have arisen since the closing date of the accounting heretofore rendered, and that the amount, if any, of such damages, be considered in striking the balance provided for in the order of this court upon this appeal."

Separate Appeals Involving Same Questions.

On November 16, 1907, the Boysen Mining Company conveyed 88.16 acres of the patented tract to the Big Horn Power Company. Between November, 1907, and May, 1908, the Big Horn Power Company constructed a power dam 35 feet in height on the 88 acre tract in the Wind River canyon of the Big Horn River, and installed a power plant therein. At the same time, it constructed concrete piers and a bridge, hereinafter referred to as the superstructure, on the top of such power dam.

The Burlington Company claims a right-of-way across the patented tract and operates a line of its railway over such right-of-way.

Appeals numbered 40, 42, 44, 45 and 47, in part; and appeals numbered 41, 43, 46 and 48, in their entirety, involve that portion of the several decrees entered in each of the four cases below, adjudicating as to the right-of-way of the Burlington Company across the patented tract; adjudicating that the power dam constitutes a nuisance and enjoining the abatement of such nuisance by removing the superstructure and widening the spillway. In so far as such appeals raise questions relative to the right-of-way, the nuisance and the abatement thereof they will be disposed of together later in this opinion, under the headings "Right-of-Way" and "Nuisance."

Appeal No. 40. Cause No. 288.

The two supplemental bills, above referred to, were filed by Clarke. The other original complainants in No. 288 were not parties thereto. The Burlington Company, the Big Horn Power Company and Allan Boysen filed answers.

Boysen and the Boysen Mining Company did not file answers.

On August 21, 1925, the Burlington Company and the Big Horn Railroad Company filed an amended and supplemental answer and counter-claim in which they set up that the dam was a nuisance and asked to have it abated.

The Wyoming Power Company appeared in the cause but filed no answer.

Allan Boysen, in his answer, claimed he had acquired title to a portion of the dam as the purchaser at a mechanic's lien foreclosure sale and that he had transferred such title to the Wyoming Power Company, and that certain machinery, bought by him and later sold to the Wyoming Power Company, was not a part of the realty and Clarke had no interest therein. These claims are more fully referred to in the discussion of appeals Nos. 44 and 45. The cause was referred to

a special master, who heard the evidence and made his report.

The court found that Clarke owned an undivided 9/32nds interest in the land, dam and machinery installed in the dam superior to the claim of all the defendants to such supplemental bills, excepting the Burlington Company; that the Fremont Power Company, Allan Boysen and the Wyoming Power Company had successively been in exclusive possession of the dam and power plant continuously from November 10, 1913, to the date of the decree; that $4,000 per year was the reasonable rental value of the property; that Clarke was entitled to recover 9/32nds of such rental value from November 10, 1913, the closing date of the prior accounting, to March 9, 1928, the date of the decree, or $16,124.99; and that Wertz was entitled to recover 1/32nd of the rental value for such period, or $1791.67. The court decreed that these amounts should be off-set against the amounts Clarke and Wertz had been theretofore ordered to pay to the Boysen Mining Company. It ordered that the moneys, paid into the registry of the court by Clarke, be refunded to him and awarded him judgment for $5,222.78 against the Boysen Mining Company, the Fremont Power Company and the Wyoming Power Company. It awarded Wertz judgment for the balance of $805.64 against the same parties, although Wertz was not a party to such supplemental bill. It adjudged that the power dam and superstructure constituted a public and private nuisance and enjoined each party to the cause, excepting the two railroad companies, to remove the superstructure of such dam and enlarge the spillway. A like decree, with reference to the dam, was entered in each of the four cases.

From such decree, No. 288, Clarke has prosecuted appeal No. 40.

Counsel for Clarke contend that he is entitled to recover his proportionate interest of the reasonable rental value of the property from the several parties, who used the dam subsequently to the closing date of the accounting.

Boysen and his successors, the Boysen Mining Company, and Clarke were tenants in common. Broatch v. Boysen (C. C. A.) 175 F. 702, 706. Each tenant in common has the right to occupy the common property.

A co-tenant, who collects rent on the common property from a third person must account to his co-tenant for the latter's proportionate share thereof. Sons v. Sons, 151 Minn. 360, 186 N. W. 811; 7 R. C. L. p. 826, § 22.

Where a tenant in common wrongfully excludes his cotenant from the common property and holds and claims it adversely to his co-tenant, he is liable to his co-tenant for the latter's proportionate share of the reasonable rental value of the property, during the period of such occupancy. Sons v. Sons, supra; Todd v. Stewart, 199 Iowa, 821, 202 N. W. 844, 846; Page v. Johnson, 148 Tenn. 47, 251 S. W. 893, 898; Markum v. Markum (Tex. Civ. App.) 273 S. W. 296, 298; Kelly v. Dierks, 131 Okl. 217, 268 P. 193, 194; 38 Cyc. pp. 66, 67; 7 C. J. p. 828, § 23.

The master did not determine the reasonable rental value of the land for the reason that he held that the title thereto had passed to Allan Boysen through the mechanic's lien foreclosure sale.

In 1911, the Big Horn Power Company leased two of the possible units of the dam to the Fremont Power Company for a rental of $10,500 per annum. The Fremont Power Company operated the plant under this lease until November, 1916. In November, 1916, Allan Boysen went into possession and continued to operate the plant, first, under the name of the Fremont Power Company and, later, under the name of the Shoshoni Light & Power Company. The plant supplied current for power and light to the town of Shoshoni. Later, the Wyoming Power Company took over the plant and sold current for power to the Burlington Company and current for power and light to the towns of Shoshoni and Riverton. Allan Boysen testified that they sold between 42 and 50 thousand kil'o-watt hours per month. Experts testified that the returns should be a minimum of three cents per kil'o-watt. This would produce an annual income of $18,000.

It is our conclusion that $10,000 per annum was the reasonable rental value of the property.

Counsel for Clarke further contend that he is entitled to recover interest on his proportionate share of the amount of the reasonable rental value of the property down to the date of the decree.

Boysen and his successors wrongfully excluded Clarke from the property. In order to compensate Clarke for the damages caused by their wrongful act, he should be awarded interest at the rate of 6% per annum on his proportionate share of the rental value that had accrued on the date of of the filing of the second supplemental com-

plaint, from such date to the date of the decree, and on his proportionate share of the yearly rentals which accrued thereafter, from the respective dates such yearly rentals accrued, to the date of the decree. To do equity, interest at the rate of 6% per annum from November 10, 1913, to the date of the decree, should be allowed on the off-set item of $10,902.21 due to Boysen and Clarke on account of Clarke's original 1/16th interest and the interests which he had acquired from Woodhurst, Broatch and Wertz. Clarke's share of the damages, computed on the above basis, amounts to $35,279.00, as of March 9, 1928, after allowing off-set of $10,902.21, with interest.

█ Counsel for Clarke further contend that the money judgment should also have run against Allan Boysen.

Allan Boysen occupied a position identical with the Fremont Power Company and the Wyoming Power Company. Each of them claimed through Boysen, the Boysen Mining Company and the Big Horn Power Company; each of them wrongfully occupied the property, and excluded Clarke therefrom. It follows that Clarke was entitled to a money judgment against Allan Boysen.

The decree will be modified so as to award Clarke judgment for $35,279.00 against Allan Boysen, the Boysen Mining Company, the Fremont Power Company and the Wyoming Power Company, with interest at 6% per annum from March 9, 1928, until paid.

Appeal No. 42. Cause No. 980.

This action was brought by Clarke in 1918 to establish his interest in nine of the sixteen shares, which he alleged had lapsed under the agreement of April 1, 1899, through the failure of certain parties to that contract to accept and pay for their interests. This agreement, in part, provided:

"If any of these parties above mentioned shall fail to make their payments, on the date specified, after having received due notice from the trustee of the date when payments become due, that their interest in this agreement and partnership ceases as though they had never been a party thereto and the trustee is hereby authorized to cancel such receipts or certificates as the party or parties in default would have been entitled to if payments had been fulfilled as stipulated and the money paid by said party or parties is hereby forfeited as liquidated damages to the trustee, after thirty days' notice to place on market such receipts or certifi-

cates to be sold to the highest bidder thirty days after the cancellation of said receipt or certificate and to issue a receipt or certificate to the purchaser, who will receive equal partnerships in this agreement."

Counsel for Clarke contend that, in his original right and as assignee, he is entitled to a 9/32nds interest in the 9/16ths of the property representing the original nine lapsed shares.

In its decision, rendered October 13, 1916, in Broatch v. Boysen (C. C. A.) 236 F. 516, 520, the court said, in part:

"There was a provision in the agreement of 1899 that, if any of the parties to it failed to make the payments required of them under the contract, their interests in the partnership created thereby might be sold by the trustee on 30 days' notice; and it is assigned as error that the court below failed to decree the sale of 9 shares of other parties to that agreement than Boysen and the appellants. But no reference is found in the assignment of errors, or in the brief of appellants, to any pleadings or proof in the record which would have sustained any such decree, and none has been discovered."

Thereafter, Clarke brought this suit against Boysen, the Boysen Mining Company, Allan Boysen, Big Horn Power Company, Chicago Title & Trust Company, as trustee, Chas. H. Jackson, as trustee, the Burlington Company, the Big Horn Company, the Shoshone Power & Electric Company, the Fremont Power Company, Maurice G. Clarke, Joseph Weis, Carl H. Tiedemann, Robert C. Wertz and Midwest Power & Light Company. From a decree denying him the relief sought, Clarke has appealed.

In the original suit, commenced in 1906 by Clarke and others, Clarke sought to establish only his original 1/16th interest. Neither by pleading nor proof did Clarke seek to have his interest established in the lapsed shares or to have such lapsed shares forfeited and sold under the provisions of the agreement of April 1, 1899.

█ It is our opinion that the decree of the trial court was right, for two reasons. First, under the decision in Broatch v. Boysen (C. C. A.) 175 F. 702, the so-called lapsed interests never came into existence because there had been no acceptance of the contract of April 1, 1899, on the part of the nine parties named therein, whose interests Clarke now claims have lapsed. If there were no acceptances, on the part of these nine persons, and their interests therefor never

came into existence, such interests could not be forfeited under the terms of the contract. Second. Clarke has been guilty of laches. He should have set up his claim of interest in such lapsed shares in his original bill of complaint, which was filed in 1906. He first asserted his claim to such lapsed shares in 1918, by a proper suit. Between 1906 and 1918, Boysen and his successors claimed title to 10/16th of the patented tract and expended large sums of money in the improvement thereof.

The decree is affirmed, in so far as it denied the relief sought by Clarke.

Appeals Nos. 44 and 45. Cause No. 1320.

On January 3, 1908, the Big Horn Power Company issued its bonds in the total amount of $350,000, and, to secure such bond issue, executed a deed of trust to the Chicago Title & Trust Company and Chas. H. Jackson, as trustees, covering the 88.16 acre tract, the dam, the power plant and machinery, and water rights. On September 23, 1922, the above named trustees resigned and Henry B. Pogson and Augustus R. Smith, complainants below, succeeded them as such trustees.

Default having been made in the principal and interest on such bonds, Pogson and Smith brought this action to foreclose the deed of trust. Two bondholders, Henry T. Clarke and Ella R. Clarke, owners of about $155,000 face value of the bonds, were permitted to intervene. The Big Horn Power Company, Wyoming Power Company, Big Horn Railroad Company, the Burlington Company, Allan Boysen and others were made parties defendant. The Wyoming Power Company, the two railroad companies and Allan Boysen were the only ones who answered.

In its answer, the Wyoming Power Company set up that, on March 11, 1911, a suit was instituted in the District Court of Fremont County, Wyoming, by the Shoshoni Lumber Company against the Big Horn Power Company and others wherein it was sought to foreclose a mechanic's lien held by such lumber company against the dam and reservoir, power plant and transmission lines; that the Chicago Title & Trust Company and Chas. H. Jackson, trustees named in the deed of trust, were made parties defendant in such action and duly served with process therein; that, on May 17, 1913, such trustees filed their answer to the petition of the lumber company and later participated in the trial of such action; that, on September 11, 1915, a judgment in foreclosure was rendered in favor of the lumber company and against the Boysen dam, the power plant and machinery; that, thereafter, on December 22, 1915, an order for sale was issued; that, pursuant to such order of sale, such property was sold January 4, 1916, to Allan Boysen, and that such sale was thereafter duly confirmed; that, by reason of such proceedings, the trustees, their successors and the bondholders secured by the deed of trust were foreclosed and forever barred of any right, title and interest in and to such dam, power plant and machinery; that, on January 4, 1916, Allan Boysen went into possession of such dam, power plant and machinery and used and operated the same in the manufacture, distribution and sale of electric energy until November, 1917, when he sold and conveyed all of such property to the Wyoming Power Company; that, since November, 1917, the Wyoming Power Company has been and now is in sole possession and control of said property and has been and now is the sole owner thereof.

The trial court decreed that, on the date of the giving of such deed of trust, the Big Horn Power Company was the owner of an undivided 11/16ths interest in such property; ordered a foreclosure of the deed of trust against such 11/16ths interest; decreed that the lien of the trust deed was junior to the following: A lien to Allan Boysen, as assignee of Rosa L. Thompson, for $3,893.72 with interest at 7% per annum from July 15, 1914. A lien to the Wyoming Power Company for $7,383.65, without interest, on account of the purchase by Allan Boysen of the property at such purported mechanic's lien foreclosure sale. The court further decreed that the right-of-way over the property of the Burlington Company should not be sold and that the judgment and purported sale in the mechanic's lien foreclosure suit were void.

Counsel for the trustees and intervening bondholders contend that the court erred in adjudging that the lien of the deed of trust was inferior to the alleged lien of Allan Boysen, as assignee of Rosa L. Thompson, and the alleged lien of the Wyoming Power Company, as assignee of Allan Boysen.

The court was apparently of the opinion that these two liens came within the following provisions of the deed of trust:

"And if the party of the second part (the trustee) or the holder or holders of said bonds, or any of them, advance or expend any money in the payment of any taxes,

rates, levies and assessments, or either or any of them, or to free said property from any such outstanding lien, * * * or to redeem said property from any tax sale, or to purchase any tax title thereon, * * * or in any manner to protect the title, estate and property hereby conveyed, * * * the money so advanced or expended, as well as reasonable compensation for the services of the party so acting, shall become an additional indebtedness secured by this trust deed, in the same manner as the principal debt, but paramount thereto, and shall be repaid by the party of the first part (The Big Horn Power Co.), or its successors, to the party or parties so paying and advancing said money in such gold coin as aforesaid, on demand, and may be collected at any time after the same shall have been advanced or expended, with interest thereon at the rate of seven per cent. (7%) per annum, and such money shall be paid out of the proceeds of sale of the property aforesaid, if not otherwise paid by the party of the first part. * * * "

The property of the Big Horn Power Company was sold for delinquent taxes on July 14, 1911. A committee of bondholders had been organized in 1910. The tax sale certificate was acquired by John J. Spindler as trustee for the bondholders' committee, and the certificate was advertised for sale in July, 1914. Boysen, acting for the Big Horn Power Company, borrowed $3,893.72 from Rosa L. Thompson, his sister-in-law, and gave her a note of the Big Horn Power Company, which reads as follows:

"$3893.72 Shoshoni, Wyo., July 15, 1914.

"On or before Jan. 1st 1918 after date, for Value Received, we promise to pay to the order of Rosa L. Thompson the sum of Thirty Eight Hundred Ninety Three and 72/100 Dollars at Bradford Exchange Bank, Bradford, Illinois, with interest at the rate of seven per cent. per annum, after July 15th, 1914.

"This note is given for money advanced to protect title, estate and property of Big Horn Power Company in Fremont County, Wyoming, for taxes and is a preferred claim under a Trust Deed dated Jan 1st 1908 to Chicago Title & Trust Company, Trustee.
 "Big Horn Power Company
"[Signed] Asmus Boysen, President."

With the proceeds of this loan, the Big Horn Power Company redeemed the property from such tax sale certificate on July 13, 1911. Boysen testified that he redeemed such property for the purpose of protecting the Big Horn Power Company and not for the purpose of protecting the security of the bondholders. He further testified that Mrs. Thompson owned some of the outstanding bonds.

It seems clear to us that if a bondholder wished to pay taxes due on such property or to redeem it from tax sale and bring himself within the quoted provisions of the deed of trust he should have made such expenditure or advance for the benefit of himself and the other bondholders and in order to protect their rights, and not for the benefit of the mortgagor and to protect its rights. In the instant case, the rights of the bondholders needed no protection. The credit was clearly extended to the Big Horn Company, the mortgagor. The loan was made for the benefit of the Big Horn Company. Therefore, it does not fall within the provisions of the deed of trust.

Allan Boysen purchased the judgment of the Shoshoni Lumber Company for $6,000. He testified that he bought it in order to acquire an interest adverse to the bondholders. He did not make such payment for the benefit of the bondholders or to protect their interests. Both Allan Boysen and the Wyoming Power Company, the successor to his alleged title, went into possession of the property and claimed the same adversely to the Big Horn Power Company and the trustees and bondholders. In its answer in this case, the Wyoming Power Company asserted its alleged paramount title to the property.

The court held that the judgment and sale in the mechanic's lien foreclosure suit were void and denied the claim of title of Allan Boysen and his successor, the Wyoming Power Company. Under such a state of facts, neither Allan Boysen nor the Wyoming Power Company can now claim that they paid off this mechanic's lien, under the quoted provisions of the deed of trust. They are not entitled to reimbursement and a lien therefor paramount to the general lien of the deed of trust.

The decree is modified to award Allan Boysen, as the assignee of Rosa L. Thompson, a lien to secure the sum of $3,893.72, with interest at 7% from July 15, 1914, inferior to the claims of the trustees and bondholders, and of the same right and priority as the claim of Allan Boysen, referred to in subparagraph E of paragraph 18 of the decree.

The decree is further modified so as to disallow, in its entirety, the claim of alleged lien of the Wyoming Power Company, as assignee of Allan Boysen, without prejudice to the assertion of his rights as a purchaser under a void foreclosure sale against the Big Horn Power Company.

### Appeal No. 165. Cause No. 1320.

After the decree was entered in cause No. 1320, on October 23, 1928, Pogson and Smith, as trustees, filed a motion for leave to file a bill of review therein, on the ground of newly discovered evidence, touching two of the issues involved in that cause. First, the lien allowed to Allan Boysen, as assignee of Rosa L. Thompson, and, second, the right-of-way obtained by the Big Horn Railroad Company under the provisions of the Act of March 2, 1899, 30 Stat. 990 (25 USCA §§ 312–318).

The purported bill of review alleged that Rosa L. Thompson was not the owner or holder of any of the bonds of the Big Horn Power Company on July 7, 1914, the date of the alleged loan by her to the Big Horn Power Company, or at any other time, and attached, as an exhibit, the affidavit of Rosa L. Thompson to that effect.

The purported bill of review further alleged that the Burlington Company represented to the General Land Office, in connection with its application for a right-of-way over the lands of Alta Hanaway, an Indian, that an agreement had been reached between the Big Horn Railway Company and the Big Horn Power Company in regard to the height of the power dam, which permitted construction of the superstructure, and attached an affidavit of Clarke with reference to certain records in the Department of the Interior in support thereof.

The question of the lien of Allan Boysen, as such assignee, has already been resolved in favor of the trustees and interveners in cause No. 1320, in appeals Nos. 44 and 45.

The Big Horn Railroad Company filed objections to the motion to file the bill of review and set up copies of the records in the office of the Department of the Interior relative to the Hanaway right-of-way application. We have examined these records and are of the opinion that they do not warrant the conclusions of fact set forth in the bill of review and, had the evidence relative thereto been offered at the trial, it would not have changed the result.

For the foregoing reasons, the order denying leave to file the bill of review is affirmed.

### The "Right-of-Way" and the "Nuisance."
### Appeals Nos. 41 to 48, inc.
### Causes Nos. 288, 980, 1320, 1513.
#### 1. Right-of-Way.

In January and February, 1905, the Big Horn Railroad Company, proceeding under the Act of March 2, 1899, c. 374, 30 Stat. 990 (25 USCA §§ 312–318) relating to the acquisition of railroad rights-of-way through Indian lands, surveyed a twenty mile section of its road through the Wind River or Shoshone Indian reservation. On February 2, 1905, it adopted such survey as the definite location of its road. This survey crossed the patented tract. On March 1, 1905, it served its map thereof on the Indian agent in charge of the reservation, as required by the regulations of the Department of the Interior, and filed the same in that department on March 27, 1905. Such map was approved by the Secretary of the Interior on April 29, 1905. This all occurred prior to the selection and location by Boysen of the patented tract, and the issuance of patent therefor to Boysen. Thereafter, in 1909, 1910 and 1911, the Big Horn Railroad Company constructed its railroad on such right-of-way. By the Act of March 3, 1905, c. 1452, 33 Stat. 1016, the Shoshone and Arapahoe tribes of Indians ceded, granted and relinquished to the United States certain designated portions of the land embraced within such reservation, to be held by the United States as trustee. The lands thus ceded to the United States embraced a portion of the 178,000 acres included in the Boysen Coal Mining lease and included all of the patented tract.

In September, 1909, the Boysen Mining Company and the Big Horn Power Company, successors in title of Boysen to the patented tract, conveyed to the Burlington Company a strip of land 150 feet wide in part and 300 feet in the remaining part extending across the patented tract. This strip included within its boundaries the 100 foot right-of-way across the patented tract sought to be acquired by the Big Horn Railroad Company under the Act of March 2, 1899. The Big Horn Railroad Company conveyed all its railroad and right-of-way, including the right-of-way here involved, to the Burlington Company on July 1, 1916.

On June 4, 1918, Clarke filed the supplemental bill, above referred to, and made the Burlington Company and the Big Horn Railroad Company parties defendant thereto for the purpose, among other things, of litigating the title to the right-of-way over the patented tract. The amended answer of the

Burlington Company and the Big Horn Railroad Company sets up the acquisition of the right-of-way under the Act of March 2, 1899; the conveyance of the right-of-way tract to the Big Horn Railroad Company by the Boysen Mining Company and the Big Horn Power Company; the loss of right in complainant to claim or recover possession of the right-of-way because of the building of the railroad thereon, and the acquisition of title by adverse possession.

On June 17, 1918, Clarke commenced cause No. 980, above referred to, for the purpose of establishing his interest in the lapsed shares under the agreement of April 1, 1899.

On December 26, 1922, Pogson and Smith, trustees under the deed of trust of the Big Horn Power Company, commenced cause No. 1320, above referred to, to foreclose such deed of trust. The two railroad companies were made parties defendant in the two last mentioned suits and by amended answers therein set up the same titles to the right-of-way strip as those pleaded in their amended answers in cause No. 288.

On December 9, 1924, the Burlington Company instituted cause No. 1513 in the United States District Court for the District of Wyoming against Clarke and others, in which it sought to remove the clouds from the title to its right-of-way strip across the patented tract and to have the nuisance, created by the dam, abated by the removal of the superstructure and the enlargement of the spillway.

A final decree was entered by the court in each of the above causes on March 9, 1928. In its findings, in cause No. 288, the court found that the Big Horn Railroad Company had proceeded with its survey, and service, submission and approval of its map, under the Act of March 2, 1899, as above stated; that it had paid the compensation determined in accordance with the Act, for its right-of-way on December 7, 1908, and that such compensation had been received and retained by the United States. The court concluded, however, that the Burlington Company's title was subordinate and inferior to the title of Clarke and Wertz, and by decree quieted their titles to 5/16ths as against the Burlington Company. Apparently, it was the theory of the trial court that the Act of March 3, 1905, had removed the lands involved from the purview of the right-of-way act of March 2, 1899. The court decreed that the Burlington Company owned, in fee, an undivided 11/16ths interest of the right-of-way strip by virtue of the deed from the Boysen Mining

Company and the Big Horn Power Company, and that it had the right to use and occupy the right-of-way strip as against the owners of the remaining 5/16ths decreed to Clarke and Wertz, for the operation of its railroad, and that Clarke and Wertz were relegated to an action at law for damages, and that the decree was without prejudice to such an action.

The decree, entered on the same day in the other cases, awarded the Burlington Company a fee title to 11/16ths of the right-of-way and the right to the use and occupancy of the remainder, subject to its liability for damages to Clarke and Wertz.

 Counsel for Clarke, Henry T. Clarke, Ella R. Clarke, Henry B. Pogson and Augustus R. Smith, as trustees, Midwest Power & Light Co., Clarke Land & Loan Company, H. F. Clarke, Jr., Henry T. Clarke, Jr., Maurice G. Clarke, G. C. Whittal and Thomas Hunter, receiver of the Big Horn Power Company, hereinafter called the Clarke group, contend that the Act of March 3, 1905, took the patented tract without the provisions of the Act of March 2, 1899.

The right-of-way Act of March 2, 1899, is now found in sections 312 to 318, inclusive, tit. 25, U. S. C. (25 USCA §§ 312–318). Section 312 reads, in part, as follows:

"A right of way for a railway, * * * through any Indian reservation in any State or Territory, except Oklahoma, or through any lands reserved for an Indian agency or for other purposes in connection with the Indian service, or through any lands which have been allotted in severalty to any individual Indian under any law or treaty, but which have not been conveyed to the allottee with full power of alienation, is granted to any railroad company organized under the laws of the United States, or of any State or Territory, which shall comply with the provisions of sections 312 to 318 inclusive and such rules and regulations as may be prescribed thereunder * * *."

Section 314, in part, provides:

"The line of route of said road may be surveyed and located through and across any of said lands at any time, upon permission therefor being obtained from the Secretary of the Interior; but before the grant of such right of way shall become effective a map of the survey of the line or route of said road must be filed with and approved by the Secretary of the Interior, and the company must make payment to the Secretary of the Interior for the benefit of the tribe or nation, of full compensation for such right of way, in-

cluding all damage to improvements and adjacent lands, which compensation shall be determined and paid under the direction of the Secretary of the Interior, in such manner as he may prescribe. * * * "

The record shows that the Big Horn Railroad Company complied with the requirements of sections 312 to 318, inclusive.

The Act of March 3, 1905, ceded certain designated lands on such reservation to the United States, as trustee, to be held by it and thrown open for settlement upon proclamation of the President, and to be sold at specified prices per acre, under the provisions of the homestead, townsite, coal and mineral land laws, and those lands remaining after eight years to be sold at public auction to the highest bidder. It provided that the proceeds derived from such sales should be applied for the following purposes: (a) A per capita payment of $50.00 to each of such Indians. (b) The acquisition of water rights from Wyoming for the irrigation of lands retained by such Indians. (c) The construction of an irrigation system within the diminished reservation. (d) The purchase of livestock for distribution among such Indians. (e) The creation of a $50,000 school fund for the erection and maintenance of schools on the diminished reservation. (f) The establishment of a general welfare and improvement fund to be expended under the direction of the Secretary of the Interior for the benefit of such Indians. The proclamation was made June 2, 1906, opening the lands for entry on August 15, 1906. 34 Stat., part 3, p. 3208.

By the Act of March 2, 1899, Congress granted to railroad companies the power of eminent domain to take rights-of-way through Indian lands, upon payment of just compensation therefor. United States v. Ft. Smith & W. R. Co. (C. C. A. 8) 195 F. 211, 212. By this Act, Congress recognized the necessity and the desire for the construction of railroads across Indian lands. When the United States and the Indians decided to throw open for location and settlement the land designated in the Act of March 3, 1905, the desirability of inviting and encouraging construction and operation of needed and convenient lines of railroad, through such lands, was even greater than before, because the construction of such railroads would enhance the value of such lands and make them more readily salable. If the construction placed upon the Act of March 3, 1905, by the trial court and here insisted upon by counsel for the Clarke group is correct, the effect was to make impossible the construction of such needed lines of railroad until such lands passed into private ownership and became subject to condemnation under the eminent domain statute of the State of Wyoming. Such a construction should not be placed upon the Act in the absence of a clear showing that such was the intent of Congress.

Section 312, supra, provides for the acquisition of a railroad right-of-way through three classes of Indian lands. (a) Any Indian reservation in any state or territory, excepting Oklahoma. (b) Any lands reserved for an Indian agency. (c) Any lands reserved "for other purposes in connection with the Indian service." It is our opinion that the word "reserved" here means set apart or set aside; and that the lands ceded to the United States by the Act of March 3, 1905, were set apart for entry and sale at a future date "for other purposes in connection with the Indian service," and until location and entry by settlers under the Act.

The location map of the Big Horn Railroad Company was filed and approved prior to the date that these lands were opened for entry and settlement, and prior to the location thereof by Boysen. The rights of the Big Horn Railroad Company related back, at least, to the date of the filing of its location map with the Secretary of the Interior on March 27, 1905, and its rights are superior to rights acquired through any entry or location made after such date, under the Act of March 3, 1905. Great Northern R. Co. v. Steinke, 261 U. S. 119, 125, 43 S. Ct. 316, 67 L. Ed. 564; Stalker v. Ore. Short Line R. R. Co., 225 U. S. 142, 143, 152, 32 S. Ct. 636, 56 L. Ed. 1027; Shepley v. Cowan, 91 U. S. 330, 23 L. Ed. 424.

Counsel for the Clarke group contend that, even though the right-of-way Act of March 2, 1899, applies to the lands in question, yet, under the proviso of the Act, Boysen was given a preferential right to locate a 640 acre tract in the ceded lands free and clear from any such right-of-way, and that Boysen's right was superior because the right-of-way map was not filed and approved and the damages were not paid until after the passage of the Act of March 3, 1905.

If the right-of-way Act of March 2, 1899, continued to apply to the ceded lands until they passed into private ownership, the construction of the proviso contended for by counsel for the Clarke group would have suspended the operation of the right-of-way Act until Boysen had made his selection. We do not think such was the intent of Congress.

The right-of-way Act remained in force and effect and its applicability to the lands in question continued. Locators and settlers on the ceded tract took subject to any prior acquired rights-of-way, and the filing of the location map in the office of the Secretary of the Interior was notice to such settlers of the right-of-way of the Big Horn Railroad Company. Congress did not intend to give Boysen a preferential right over persons desiring to acquire such rights-of-way, but intended to give him a preferential right over other settlers who might locate lands on the ceded tract, pursuant to the provisions of the Act of March 3, 1905.

Counsel for the Clarke group further contend that the Burlington Company forfeited any right-of-way acquired under the Act of March 2, 1899, because the railroad was not completed within the time allowed by that Act. This contention is clearly without merit. The forfeiture for breach of such condition, if grounds therefor existed, could be asserted only by the United States. Van Wyck v. Knevals, 106 U. S. 360, 368, 369, 1 S. Ct. 336, 27 L. Ed. 201; Oregon Short Line v. Stalker, 14 Idaho, 362, 94 P. 56; Id., 225 U. S. 142, 32 S. Ct. 636, 56 L. Ed. 1027; Dugan v. Montoya, 24 N. M. 102, 173 P. 118; Atchafalaya Bank v. Dawson, 13 La. 497. Until such forfeiture has been asserted, the title to the right-of-way remains in the Burlington Company and is good as against third persons. Bybee v. Oregon & Calif. R. Co., 139 U. S. 663, 674-679, 11 S. Ct. 641, 35 L. Ed. 305.

Counsel for the Clarke group further contend that the court was without jurisdiction to enter the judgment and decree in cause No. 1513, upon two grounds: (a) The service of process upon the non-resident defendants was pursuant to the provisions of section 57 of the Judicial Code, section 118, tit. 28, U. S. C. (28 USCA § 118). (b) The bill in No. 1513 was an original bill and the defendant, Wertz, and the plaintiff, the Burlington Company, were citizens of the same state.

In support of their first proposition, counsel for the Clarke group cite and rely upon Ladew v. Tenn. Copper Co., 218 U. S. 357, 367, 368, 31 S. Ct. 81, 54 L. Ed. 1069.

We agree with the contentions of counsel for the Clarke group in so far as the bill in the instant case sought relief by way of mandatory injunction to abate the nuisance. A decree of injunction operates in personam. Scott v. Donald, 165 U. S. 107, 117, 17 S. Ct. 262, 41 L. Ed. 648; Pomeroy's Eq.

Juris (4th Ed.) § 1360; 32 C. J. p. 83, § 69. The writ of injunction will not issue against a person not within or subject to the jurisdiction of the court. Gruhl Realty Co. v. Groth, 193 Wis. 108, 213 N. W. 657, 658; Armstrong v. Kinsell, 164 N. C. 125, 80 S. E. 235; Western Union Tel. Co. v. Pacific & A. Tel. Co., 49 Ill. 90, 94.

However, in so far as the bill of the Burlington Company sought to remove clouds from the title to its right-of-way, service of process upon persons who resided without the District of Wyoming was clearly proper under the provisions of section 57, supra. Dick v. Foraker, 155 U. S. 404, 15 S. Ct. 124, 39 L. Ed. 201; United States v. S. P. R. Co. (C. C.) 63 F. 481.

The bill alleges the requisite diversity of citizenship between the Burlington Company and Wertz. The only defendants who appeared were Clarke and Ella R. Clarke. In their answer, they did not challenge this allegation of citizenship in the bill. Regardless of where the burden of proof would have been, had the answer denied this allegation of citizenship (see 25 C. J. p. 787, § 103; Pike County, Pa., v. Spencer [C. C. A. 3] 192 F. 11; Hill v. Walker [C. C. A. 8] 167 F. 241; Roberts v. Lewis, 144 U. S. 653, 12 S. Ct. 781, 36 L. Ed. 579; Chase v. Wetzlar, Executor, 225 U. S. 79, 85, 86, 32 S. Ct. 659, 56 L. Ed. 990), such allegation made out a prima facie case until challenged by answer or other appropriate pleading. Deputron v. Young, 134 U. S. 241, 251, 10 S. Ct. 539, 33 L. Ed. 923; 25 C. J., p. 786, § 99.

It follows then that the second ground of attack upon the jurisdiction of the court to enter the decree in cause No. 1513 is not well taken.

Counsel for Clarke further contend that the court erred in decreeing a right-of-way to the Burlington Company against him as to his 5/16ths interest in the right-of-way tract, 11/16ths of which was conveyed by the Boysen Mining Company and the Big Horn Power Company to the Burlington Company.

This question becomes immaterial, in so far as this tract is co-extensive with the right-of-way obtained under the Act of March 2, 1899; but the question requires notice, in so far as this tract is in excess of the last mentioned right-of-way.

The theory of counsel for Clarke is that the land was already devoted to public use and that the Burlington Company could not condemn such land under its power of eminent domain.

816

The general rule is that property already devoted to a public use cannot be taken for another public use under the power of eminent domain, where the latter taking will totally destroy or materially interfere with the first use. C., R. I. & P. Ry. Co. v. Williams (C. C. Kan.) 148 F. 442; C., M. & St. P. Ry. Co. v. Nation (D. C. Iowa) 237 F. 709; 20 C. J., p. 602, § 90. On the other hand, under general statutory authority, property already devoted to one public use may be condemned for another public use, under the power of eminent domain, where the latter taking will not materially impair or interfere with or is not inconsistent with the use for which the land was first appropriated. Pacific Postal Tel. Cable Co. v. Ore. & C. R. Co. (C. C. Or.) 163 F. 967; Oregon Short Line R. Co. v. Postal Tel. Cable Co. of Ida (C. C. A. 9) 111 F. 842; 20 C. J., p. 605, § 91.

The power dam must be considered in two parts: First, the lawful structure consisting of the 35 foot dam, the power machinery and equipment installed therein; and, second, the superstructure constructed on top of the 35 foot dam consisting of the piers and the bridge, which, as we shall hereinafter show, is an unlawful structure.

The right-of-way does not impair the use of the lawful portion of the dam structure and the protection of the Burlington Company's rights and interests therein will in no wise impair or interfere with the use of such lawful portion. The fact that the protection of the rights and interests of the Burlington Company in such right-of-way will interfere with the maintenance of the unlawful portion of the dam structure, in our opinion, is not material.

The deed of trust was prior in time and superior to the deed from the Boysen Mining Company and Big Horn Power Company conveying the right-of-way across the patented tract to the Burlington Company, and counsel for Pogson and Smith, trustees, and Henry T. Clarke and Ella R. Clarke contend that the court erred in not so decreeing. This contention is well taken. The decrees in Nos. 288, 980, 1320 and 1513 should have been without prejudice to an action by the trustees against the Burlington Company for damages for the taking of 11/16ths of the right-of-way conveyed by such deed, outside the exterior boundaries of the right-of-way obtained under the Act of March 2, 1899.

### 2. Nuisance.

On August 13, 1906, Boysen filed an application with the State Engineer of Wyoming for a permit to build a dam in the Wind River Canyon of the Big Horn River, on the 88.16 acre tract of land conveyed to the Big Horn Power Company. The original application requested a permit to construct a power dam 35 feet in height. This application was returned to Boysen for correction on November 27, 1907, and was again filed with amendments showing a dam 60 feet in height. Thereafter, the Burlington Company filed a protest with the State Engineer claiming that a dam 60 feet in height would interfere with its proposed line of railroad surveyed through the canyon. After a hearing, the State Engineer decided that he would permit the construction of a dam 35 feet in height and instructed the applicant to file amended plans to provide for such construction. Thereupon the plans for the 60 foot dam, together with a plan showing a cross-section but not the length of the spillway of the 35 foot dam, were apparently filed with the State Engineer as the amended plans for the 35 foot dam. The State Engineer endorsed his approval thereon, as follows: "May 6, 1908, Approved for Dam 35 feet in height, Clarence T. Johnston." Counsel for the Burlington Company and the Big Horn Railroad Company contend that such amended plans provided for a spillway 143 feet in length. On the other hand, counsel for Clarke contend that, while such plans showed a spillway 143 feet in length at the 60 foot level, the engineer did not intend to require a spillway of that length for the 35 foot dam.

The plans for the 60 foot dam showed excavations into the side walls of the canyon sufficient to provide for a spillway 143 feet in length, but this was at the 60 foot level. At the 35 foot level, the plans showed excavations into the side walls of the canyon distances sufficient only to provide for a spillway 125 feet in length. In these plans, the entire top or crest of the dam constitutes the spillway. It is unreasonable to suppose that the State Engineer would require as great a spillway for a 35 foot dam as he would for a 60 foot dam. While the amended plans left the question of the length of the spillway for a 35 foot dam somewhat clouded and uncertain, we think it fair to construe these plans as requiring a spillway only 125 feet in length for the 35 foot dam. A spillway of that length will be provided by removal of the superstructure without any additional excavations into the side walls of the canyon.

After the approval of such amended plans, the Big Horn Power Company pro-

ceeded to construct such dam. On top of the 35 foot dam, it constructed a superstructure consisting of concrete piers standing on the dam and on their tops a driveway or bridge across the canyon. There were six openings between these piers, each affording a clearing for the water 14 feet 10½ inches, so that the total spillway was 89 feet 3 inches instead of 125 feet, as required by the plans. During flood periods following melting snows in the spring or after heavy rains, the dam and superstructure prevent the passage of flood waters down the river and back the waters up on to the railroad right-of-way, submerging it for a depth of from one to four feet,' and forcing the water through the railroad tunnels at great speed. This results in substantial damage to the railroad right-of-way, track and roadway, greatly delays the running of trains and imperils the lives of railroad employees and passengers.

On December 2, 1913, in a suit brought by the State of Wyoming against the Big Horn Power Company, the state District Court of Fremont County, Wyoming, adjudged the superstructure a public nuisance. It ordered the nuisance abated by the removal of such superstructure. It did not require any lengthening of the spillway except such as would result from the removal of the superstructure. This decree was affirmed by the Supreme Court of Wyoming in Big Horn Power Company v. State, 23 Wyo. 271, 148 P. 1110.

This is an important line of the Burlington system; it forms a connection with the Pacific Northwest; it daily carries 300 to 500 passengers, transports 10,000 to 17,000 tons of freight and carries 400 to 1000 sacks of mail.

We have already held that the right-of-way of the Burlington Company is paramount to the rights and title of Boysen and his successors, and of Clarke and Wertz.

Counsel for the Clarke group contend that the dam was built in accordance with the permit of the State Engineer and was approved by him. This contention is predicated upon the testimony of Boysen to the effect that the State Engineer knew of the construction of the superstructure and, on July 1, 1913, after the dam was completed, approved amended plans showing such superstructure. This contention was pressed in Big Horn Power Co. v. State, supra, and denied by the Supreme Court of Wyoming. Section 947, Compiled Stat. of Wyoming, 1920, provides:

"Duplicate plans for any dam across the channel of a running stream, above five feet in height, or of any other dam intended to retain water above ten feet in height, shall be submitted to the state engineer for his approval, and it shall be unlawful to construct such dam until the said plans have been approved."

In Big Horn Power Company v. State, supra, the Supreme Court of Wyoming construed this statute and held that the approval of the plans by the State Engineer was a condition precedent to the lawful construction of the dam; that the approval of the amended plans on July 2, 1913, after the completion of the dam, was not the approval contemplated or required by section 947, supra, and, therefore, it could not be said that the dam had been built with and by the approval of the State of Wyoming, in so far as material departures had been made from the plans' approved May 6, 1908. With this conclusion, we fully agree.

Counsel for the Clarke group further contend that neither the State of Wyoming nor the state engineer had any jurisdiction with respect to this dam, for the reason that it was constructed on Indian lands, and cite and rely upon section 815, Wyoming Comp. Stat. 1920, adopted at the 1893 legislative session of the State of Wyoming, which reads as follows:

"Exclusive jurisdiction shall be, and the same is hereby ceded to the United States, over and within all that territory embraced within the boundaries and limits of what is known as the Shoshone Indian reservation, in said state, saving, however, to said state the right to serve civil and criminal process within said Indian reservation, in suits or prosecutions for, or on account of rights acquired, obligations incurred or crimes committed in said state, but outside of said cession and said Indian reservation; and saving further to said state the rights to tax persons and corporations, their franchises and property, on said reservation."

Section 3 of the Ordinances of the Constitution of Wyoming, Comp. Stat. of Wyoming, 1920, page 69, in part reads:

"The people inhabiting this state do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian or Indian tribes, and that until the' title thereto shall have been extinguished by the United States,

the same * * * shall remain under the absolute jurisdiction and control of the congress of the United States."

The Act of July 10, 1890, 26 Stat. p. 222, Wyoming Comp. Stat. 1920, p. 35, which admitted the State of Wyoming into the union, declared that such constitution "is hereby accepted, ratified, and confirmed." Construing this statute in the light of the constitutional provision above quoted, we are of the opinion that the state engineer had jurisdiction over the dam in question at the time of the application for the permit and the construction of the dam, for the reason that the title to the land had theretofore passed from the United States, as trustee for the Indians, into the private ownership of Boysen and his successors. Townsend v. United States (C. C. A. 8) 265 F. 519, 521.

■ Counsel for the Clarke group further contend that the state engineer had no jurisdiction to limit the height of this particular dam, unless it was unsafe. This contention is based upon the theory that section 948, Comp. Stat., Wyoming, 1920, instead of section 947, supra, applies to this particular dam. In Big Horn Power Co. v. State, supra, the Supreme Court of Wyoming considered this contention and held that the dam in question came under section 947 and not under section 948. The construction to be placed upon a statute of a state is peculiarly a question of local law, to be ascertained and established by the courts of such state. For that reason, federal courts ordinarily hold themselves bound by the interpretation of state statutes by such state courts. Edward Hines Yellow Pine Trustees v. Martin, 268 U. S. 458, 45 S. Ct. 543, 69 L. Ed. 1050. We agree with the construction placed upon these statutes by the Wyoming Supreme Court and adhere thereto.

■ Counsel for the Clarke group further contend that the Burlington Company is estopped to complain of such superstructure and narrow spillway as a nuisance, because the dam and superstructure were constructed and completed before the construction of the railway.

The Burlington Company's predecessor, the Big Horn Railroad Company, filed its application for its right-of-way in March, 1905. When application was made to the state engineer for the approval of a dam 60 feet in height, the Burlington Company protested and the state engineer limited the height of the dam to 35 feet and approved the plans for a dam 35 feet in height with a spillway 125 feet long. Under these facts,

the Burlington Company clearly had the right to construct its railroad on its right-of-way and to rely upon its right to require the dam to be modified to conform to a lawful structure.

■ Counsel for the Clarke group further contend that the Burlington Company is barred by limitation and laches because it did not set up, in its amended answers and counter-claims, the facts with reference to the alleged nuisance and did not seek an abatement thereof by injunctive decree until 1925.

It is settled law that a prescriptive right to maintain a public nuisance cannot be acquired. Northwestern Fert. Co. v. Village of Hyde Park, 97 U. S. 659, 668, 669, 24 L. Ed. 1036; Freedman v. Borough of W. Hazleton, 297 Pa. 58, 146 A. 564, 566; Hynes v. Brewer, 194 Mass. 435, 80 N. E. 503, 9 L. R. A. (N. S.) 598; Meiners v. Frederick Miller B. Co., 78 Wis. 364, 47 N. W. 430, 10 L. R. A. 586; Penn. R. R. Co. v. Sagamore Coal Co., 281 Pa. 233, 126 A. 386, 391, 39 A. L. R. 882.

Laches is not a mere matter of time, such as limitation, but is principally a question of the inequity of permitting the claim to be enforced because of "some change in the condition or relations of the property or the parties." Galliher v. Cadwell, 145 U. S. 368, 373, 12 S. Ct. 873, 875, 36 L. Ed. 738; Columbia Life Ins. Co. v. Black (C. C. A. 10) 35 F.(2d) 571, 576. The Burlington Company challenged the right of the Big Horn Power Company to construct a dam of greater height than 35 feet by a protest to the State Engineer. The decision of the State Engineer was favorable to the Burlington Company. It had a right to believe this order of the State Engineer would be obeyed. On January 24, 1909, the State of Wyoming brought a suit to abate the unlawful superstructure as a public nuisance, and obtained a decree enjoining the removal of the superstructure. The Burlington Company had a right to expect that this decree would be executed. Thereafter, it entered into negotiations with the Wyoming Power Company with a view to working out an agreement for the correction of the nuisance. The facts and circumstances justified the belief that these negotiations would result in an agreement for the abatement of the nuisance. The Burlington Company has not been inactive. No change has occurred which would render it inequitable to grant relief.

■ The Big Horn Railroad Company and the Burlington Company initiated their rights prior to the creation of the nuisance.

The superstructure was erected contrary to law and constitutes a continuing public and private nuisance. Such being the facts, the Burlington Company is not precluded from seeking injunctive relief for the abatement of such nuisance merely because it constructed its line of railway after the creation of such nuisance. United States v. Luce (C. C. Del.) 141 F. 385, 410, 411; Buckeye Cotton Oil Co. v. Ragland (C. C. A. 5) 11 F.(2d) 231, 234; Oehler v. Levy, 234 Ill. 959, 85 N. E. 271, 273, 274, 17 L. R. A. (N. S.) 1025, 14 Ann. Cas. 891; Town of Rentz v. Roach, 154 Ga. 491, 115 S. E. 94; Susquehanna Fert. Co. v. Malone, 73 Md. 276, 20 A. 900, 902, 9 L. R. A. 737, 25 Am. St. Rep. 595; Longley v. McGeoch, 115 Md. 182, 80 A. 843, 846; Campbell v. Seaman, 63 N. Y. 568, 584, 20 Am. Rep. 567.

In the case last cited the court said:

"One cannot erect a nuisance upon his land adjoining vacant lands owned by another and thus measurably control the uses to which his neighbor's land may in the future be subjected. He may make a reasonable and lawful use of his land and thus cause his neighbor some inconvenience, and probably some damage which the law would regard as damnum absque injuria. But he cannot place upon his land any thing which the law would pronounce a nuisance, and thus compel his neighbor to leave his land vacant, or to use it in such way only as the neighboring nuisance will allow."

The decrees appealed from adjudged that such nuisance should be abated through the removal of the superstructure and the enlargement of the spillway within six months from the date of the decrees by the parties to the several suits, except the Burlington Company and the Big Horn Railroad Company, and by the purchaser or purchasers at the mortgage foreclosure sale.

Counsel for Clarke, Pogson and Smith, the trustees under the mortgage, and Henry T. Clarke and Ella R. Clarke, the intervening bondholders, contend that the trial court erred in decreeing that they should abate the nuisance.

We agree with this contention in so far as the trustees and intervening bondholders are concerned. The trustees merely held the title to the property under the deed of trust as security for the bond issue. The deed of trust has been foreclosed; the property has been sold; and the sale has been confirmed. The duties of the trustees have practically ended. They did not create the nuisance, and they have not continued it. They should not have been required to abate it. The intervening bondholders have never held title to the patented tract; have never been in possession thereof; and neither created nor continued such nuisance. It is obvious that they should not have been required to abate it.

The owner of land in possession, whose predecessor in title or possession has created thereon a continuing nuisance, is obligated to abate such nuisance after notice and knowledge thereof. Lamb v. Roberts, 196 Ala. 679, 72 So. 309, 310, L. R. A. 1916F, 1018: Fuller v. Andrew, 230 Mass. 139, 119 N. E. 694, 696; Brown v. St. L.-St. F. Ry. Co. (Mo. App.) 268 S. W. 678, 680; 46 C. J. p. 745, § 334.

Counsel for Clarke assert the duty to abate did not devolve upon him because no notice of such nuisance and request to abate it was served upon him by the Burlington Company. Such notice and request to abate is usually necessary as a prerequisite to impose liability against a person who merely passively continues a private nuisance created by his predecessor in title or possession. Phila. & R. Co. v. Smith (C. C. A. 3) 64 F. 679, 680, 687, 27 L. R. A. 131; Edwards v. Atchison T. & S. F. R. Co. (C. C. A. 9) 15 F.(2d) 37, 38; Lamb v. Roberts, supra; Joyce on Nuisances, § 457; 46 C. J. p. 742, § 324, Id., p. 744, § 332. The reason for the rule is that the grantee of land has the right to assume that structures upon the land are rightfully there and, even where they interfere with rights usually appurtenant to other estates, that the right thus to interfere has been lawfully obtained. It would be inequitable to subject the grantee to liability until it is shown that he has knowledge that, in maintaining the structure or work complained of, he is infringing upon the rights of others. Leahan v. Cochran, 178 Mass. 566, 60 N. E. 382, 53 L. R. A. 891, 86 Am. St. Rep. 506. There is respectable authority to the effect that the rule does not apply to a public nuisance. Leahan v. Cochran, supra; Fuller v. Andrew, supra.

The only purpose of the rule is to give a person, who is merely passively continuing a nuisance, knowledge thereof and an opportunity to abate the same. The record discloses that Clarke had notice and knowledge of this nuisance long before the Burlington Company filed its counter-claim and sought abatement thereof. Subsequent events clearly disclose that notice and request to abate would have been without avail because Clarke denied and now denies that the superstructure constitutes a nuisance; denies that

the Burlington Company is entitled to have it abated, and denies that he is personally liable to abate the nuisance. Furthermore Clarke was not in possession when the decrees were entered. Under these facts, it is our conclusion that service of such notice would have been an idle ceremony.

Counsel for Clarke further assert he did not create the nuisance and should not be compelled to abate it. It is true that the dam and superstructure were constructed by the Big Horn Power Company, successor in title of Boysen, and that neither Clarke, Broatch, House, Wertz nor Woodhurst were in any wise responsible for the creation of such nuisance, and that Clarke was not in possession of the patented tract when the decrees were entered. However, Clarke has procured a decree in a court of equity, in case No. 288, establishing his title and right to possession as a co-tenant owning 9/32nds of the patented tract, dam and power plant, and has sought and recovered rents and profits for the use of such dam and power plant since November 10, 1913.

On coming into possession, because of his ownership, Clarke would be liable with his co-tenants, the purchasers at the mortgage foreclosure sale, to abate the nuisance after notice and knowledge thereof. We think under the circumstances that the court having all the parties in interest before it, in order to avoid circuity of action and further litigation, could properly condition the decree establishing Clarke's title and right to possession, by the requirement that Clarke, together with his co-tenants, the purchasers at the mortgage foreclosure sale, should abate the nuisance.

The purchasers at the foreclosure sale bought with knowledge that the decree of foreclosure required them to abate such nuisance, and by becoming purchasers at the foreclosure sale, they voluntarily became parties to the suit, and became bound by the decree in case No. 1320. Champlin Refining Co. v. Bailey (C. C. A. 10) 36 F.(2d) 655; Wood v. Mann, 30 Fed. Cas. 17,954. By the foregoing, we are not to be understood as holding that either Clarke or such purchasers are liable for any damages caused by such nuisance until after the expiration of six months from the date the modified decree is entered herein, which period the trial court held to be a reasonable time for the abatement of such nuisance, because this interesting question (see Proceedings, American Law Institute, Vol. VII, pp. 201–202), as we view the situation, is not presented on this record. Neither are we to be understood as determining how the cost of abating such nuisance shall be apportioned as between the purchasers at such foreclosure sale and Clarke.

### 3. Jurisdiction of Counter-Claims.

Counsel for the Clarke group further contend that the decrees establishing the title of the Burlington Company to the right-of-way and enjoining the abatement of the nuisance are void because neither the counter-claims of the Burlington Company nor process thereon were served upon Wertz.

Wertz was served with process under the provisions of section 57 of the Judicial Code (28 USCA § 118) in cause No. 1513 brought by the Burlington Company and in that suit a decree adjudicating the title of the Burlington Company to the right-of-way was properly entered.

With reference to the decree in the several suits to abate the nuisance, Wertz was not an indispensable party defendant, if he was not a resident of the District of Wyoming, was not in possession of the property and not continuing the nuisance created by the Big Horn Power Company. The owner of the property on which the nuisance exists, who is not in possession thereof and not maintaining the nuisance, is not an indispensable party defendant. McMechen v. Hitchman-Glendale C. C. Co., 88 W. Va. 633, 107 S. E. 480; Denapolis v. United States (C. C. A. 5) 3 F.(2d) 722, 723, 724. It may be that Wertz could complain of the decree of injunction entered against him, but he has not appealed. If Wertz were not an indispensable party defendant, the Clarke group was not injured by reason of the fact that the counter-claims of the Burlington Company were not served upon him.

Counsel for the Clarke group contend that the court did not have jurisdiction of the causes of action set up in the counter-claims of the Burlington Company. Such counter-claims set up causes of action in equity. They were clearly within the provisions of Equity Rule 30 (28 USCA § 723) and were proper. American Mills Co. v. Amer. Surety Co., 260 U. S. 360, 43 S. Ct. 149, 67 L. Ed. 306.

We conclude that the Burlington Company was entitled to a decree, as against the defendants in cause No. 1513, quieting title to its right-of-way over the patented tract, as shown on the map thereof filed with the Secretary of the Interior on March 27, 1905; that the court should not have issued its injunction in cause No. 1513 for the abatement

of such nuisance against the defendants who resided beyond the territorial jurisdiction of the court and who were served with process only under the provisions of section 57, supra; that the court should not have issued its injunction in the other causes for the abatement of such nuisance against any of the Clarke group excepting John T. Clarke; that the decrees should have required enlargement of the spillway to a length of 125 feet only; that the decrees should have been without prejudice to an action for damages by Pogson and Smith, as trustees, against the Burlington Company for the taking of 11/16ths of the deeded right-of-way in excess of the right-of-way obtained under the Act of March 2, 1899; and that the decrees in all other respects with reference to the right-of-way and nuisance were correct.

The decrees will be modified accordingly.

### Motions to Dismiss Appeals.

The Burlington Company and the Big Horn Railroad Company have filed motions to dismiss the appeals of Clarke in Nos. 288 and 980; the appeal of Pogson and Smith, trustees, in No. 1320; the appeal of Henry T. Clarke and Ella R. Clarke in No. 1320; the appeal of Clarke, Midwest Power Company, Clarke Land & Loan Company, H. F. Clarke, Jr., Henry T. Clarke, Jr., Maurice G. Clarke, Ella R. Clarke, G. C. Whittal and Thomas Hunter, as receiver of the Big Horn Power Company, in No. 1513, on the ground that the decrees in those cases are joint as to such appellants and other parties, who have not joined in the several appeals and against whom summons and severances have not been procured.

■ A joint decree against several persons will not be reviewed on appeal unless all join in the appeal, or unless a summons and severance or its equivalent has been procured against those who do not join. Amer. Surety Co. v. State of Colo. for use of Little (C. C. A. 8) 22 F.(2d) 624; Smith v. Collins (C. C. A. 8) 12 F.(2d) 267; Lewis v. Sittel (C. C. A. 8) 165 F. 157, 158; Amer. Baptist Home Missions v. Barnett (C. C. A. 2) 26 F.(2d) 350, 352.

■ An analysis of the various relations, interests and sources of claim and title of the several parties to this litigation and the various theories and sets of facts, upon which the decrees against them are predicated, would unduly extend this already lengthy opinion. Suffice it to say that, with the exception of Clarke and Wertz, their sources of title are different, their rights and interests

conflict, and their rights and liabilities are predicated upon different theories and sets of facts.

Under such a state of facts, one party, against whom a decree runs, may prosecute an appeal without joining with him the other parties against whom such decree runs and without procuring summons and severance against the latter, even though the decree on its face is joint. Winters v. United States, 207 U. S. 564, 574, 575, 28 S. Ct. 207, 52 L. Ed. 340; National Surety Co. v. Leflore County (C. C. A. 5) 262 F. 325, 327, 328, 18 A. L. R. 269.

The counter-claims filed by the Burlington Company in its answers to the first supplemental bill filed by Clarke in No. 288, and to the bill filed by Clarke in No. 980, and to the bill filed by Pogson and Smith in No. 1320 did not specifically name Wertz as a party defendant thereto; and such answers and counter-claims were not served upon Wertz. These answers set up two counter-claims: One, a cause of action to quiet title germane to the subject matter of the original bill and, the other, a cause of action for injunction to abate a nuisance, which was an independent cause of action in equity.

■ Wertz clearly was not a party to the counter-claims filed by the Burlington Company in No. 1320. He was a party to the original bill in No. 288. Before Clarke had filed his first supplemental bill, Wertz had secured all the relief he desired in the original proceeding by the decrees entered therein. We seriously doubt that the fact that Clarke continued the litigation, by the filing of supplemental bills in which Wertz did not join, continued Wertz as a party to the litigation so that relief might be obtained against him by what was formerly known, in the equity practice, as a cross-bill, but now known as a counter-claim, under Rule No. 30, without service of such counter-claim upon Wertz. It is true that the court undertook to decree relief to Wertz, but this was voluntary upon the court's part; it was predicated upon no proper pleading filed or joined in by Wertz.

Wertz was a party defendant to the bill filed by Clarke in No. 980. Process in that cause was served upon him constructively, under the provisions of section 57 of the Judicial Code (28 USCA § 118). Wertz defaulted in No. 980 and the amended answer of the Burlington Company, which first set up its two counter-claims therein, was filed approximately seven years after its original answer under the equity rules was required

to be filed. It would be unreasonable to hold that Wertz, after he had defaulted, was required to keep track of the litigation and to answer a counter-claim filed so long out of time, without additional process being served upon him. Havemeyer v. Paul, 45 Neb. 373, 383, 63 N. W. 932, 935; 21 C. J., p. 354. We conclude that the Burlington Company could not obtain a valid decree against Wertz on its counter-claims without service of process on the counter-claims upon Wertz.

Both Clarke and Wertz were parties defendant to the cause of action of the Burlington Company to quiet title in No. 1513. As heretofore shown, in the discussion of the appeals from the decree in No. 1513, the injunctive decree against Wertz was improper in that suit because Wertz was beyond the territorial jurisdiction of the court. For the same reason, the injunctive decree against Wertz was improper in Nos. 980 and 1320. It was likewise improper in No. 288, unless the submission of Wertz to the jurisdiction, as complainant to the original bill in No. 288, carried through the filing of the supplemental bill by Clarke and gave the court continuing jurisdiction over Wertz. This we doubt.

Wertz defaulted in No. 1513 and by such default conceded the rights and titles claimed by the Burlington Company.

If he were a party to the Burlington Company's counterclaims in Nos. 288, 980 and 1320, he also defaulted therein and conceded the rights and titles claimed by the Burlington Company.

On the other hand, Clarke and the other defendants in No. 1513 and to such counter-claims in Nos. 288, 980 and 1320 set up affirmative rights and titles in defense of the claims of the Burlington Company and submitted them to judgment. This so severed the interest of Wertz from the interests of Clarke and such other defendants, against whom the decrees ran, as to excuse the latter from joining Wertz with them in their appeals from such decree. Winters v. United States, 207 U. S. 564, 575, 28 S. Ct. 207, 52 L. Ed. 340; National Surety Co. v. Leflore County (C. C. A. 5) 262 F. 325, 328, 18 A. L. R. 269; Zinkeisen v. Lewis, 71 Kan. 837, 80 P. 44, 83 P. 28; Lemert v. Robinson, 7 Kan. App. 758, 53 P. 485; 3 C. J., p. 1005.

For the foregoing reasons, the motions to dismiss will be denied.

### Costs.

#### 1. In the Trial Court.

The costs which have accrued since June 4, 1918, in cause No. 288 shall be assessed one-third against Allan Boysen, Wyoming Power Company, Fremont Power Company and Boysen Mining Company; one-third against Clarke; and one-third against the Burlington Company.

The costs in cause No. 1513 shall be assessed one-half against Clarke and one-half against the Burlington Company.

#### 2. On Appeal.

The costs in appeals Nos. 40, 41, 42 and 43 are adjudged one-third against Boysen, Boysen Mining Company, Allan Boysen, the Fremont Power Company, and the Wyoming Power Company; one-third against the Burlington Company; and one-third against Clarke.

The costs in appeals Nos. 44, 45 and 46 are adjudged one-half against Pogson and Smith, trustees, Henry T. Clarke and Ella R. Clarke and one-half against the Burlington Company.

The costs in appeals Nos. 47 and 48 are adjudged one-half against the Clarke group and one-half against the Burlington Company.

The costs in appeal No. 165 are adjudged against Pogson and Smith, as trustees.

### The Modified Decrees.

Counsel may prepare and submit to this court within 30 days from the filing of this opinion, modified decrees in causes Nos. 288, 980, 1320 and 1513, in accordance with the foregoing opinion.